**NATIONAL HOTEL CO. et al. v. MOTLEY.**

No. 1858.

Court of Civil Appeals of Texas. Eastland.

Dec. 9, 1938.

Rehearing Denied Jan. 13, 1939.

Wynne & Wynne, of Longview, and
Touchstone, Wight, Gormley & Price, of
Dallas, for appellants.

Hurst, Leak & Burke, of Longview, for
appellee.

FUNDERBURK, Justice.

In the trial court, Mecia Motley was
plaintiff, and Texas Hotel Company, of
Longview, Texas, and National Hotel Com-
pany, both corporations, were defendants.
The suit is one to recover damages for
injuries sustained by plaintiff by jumping
from a third story window on the occasion
of the burning of the Hotel Longview, on
March 29, 1934. The claim of liability
was based upon the tort of negligence.

The verdict of the jury upon special
issues submitted, found facts as follows:

That "on or about March 29, 1934, Mecia
Motley sustained injury to her body on
the occasion of the fire in question." That
"Texas Hotel Company of Longview on
March 29, 1934, was not in good faith run-
ning and operating said Hotel. Longview
as an independent corporation." That
"The Texas Hotel Company of Longview

was under the management and control of the National Hotel Company on March 29, 1934." That "The Texas Hotel Company of Longview was the agent of the National Hotel Company in the operation of the Hotel Longview on March 29, 1934." That "the employees of Hotel Longview failed to immediately call the fire department upon discovering that said hotel was afire." That such failure was negligence. That such negligence was a proximate cause of plaintiff's injuries. That "upon discovery of the fire by the employees of Hotel Longview that said employees failed to warn the plaintiff." There was no verdict upon issues submitted calling for findings (1) as to whether such failure to warn was negligence; and (2) whether, if so, such negligence was a proximate cause of plaintiff's injuries.

It was further found that the "fire originated * * * in the porter's closet under the stairway on the east side of the lobby." That "said porter's closet was under the exclusive control of the Hotel Longview, its agents, servants or employees." That "there was negligence on the part of the management of the Hotel Longview in the operation of said porter's closet on March 29, 1934." That such "negligence * * * was a proximate cause of the injuries * * * sustained by Mecia Motley." That "the management of the Hotel Longview permitted the fire in question to start in the hotel." That "permitting of the fire to start, by the management of the Hotel Longview, * * was negligence." That such negligence was a proximate cause of the injury to plaintiff. That "the starting of the fire on the occasion in question was not the result of an unavoidable accident." That "the fire in question was sudden and fierce" but "the suddenness and fierceness * * * of said fire was" not "the sole proximate cause of the injury * * * to plaintiff * * *."

Issues of contributory negligence were found in favor of the plaintiff. Damages were found in the sum of $17,680. The appeal is from the judgment, entered upon said verdict.

The first question we find it convenient to consider is whether or not defendant National Hotel Company was entitled to an instructed verdict in its favor, independently of questions affecting alike both the defendants. It was alleged that the National Hotel Company, chartered about May 15, 1933, was the successor to the Southern National Hotel Corporation, the charter of which latter had been forfeited for failure to pay franchise taxes, and that it owned and controlled a majority of the stock of the Texas Hotel Company of Longview. That the directors and incorporators of the Texas Hotel Company of Longview were officers or directors of the National Hotel Company, or its predecessor, or were employees of the said companies and "the stock of the Texas Hotel Company of Longview is owned and held by the National Hotel Company and that the Texas Hotel Company of Longview was organized and operated as a mere tool or conduit of the Southern National Hotel Corporation originally, and upon its forfeiting its charter rights by its successor The National Hotel Company. That the National Hotel Company and its predecessor, the Southern National Hotel Corporation, received all the revenues derived from the operation of the Hotel Longview, which supposedly was operated by the Texas Hotel Company of Longview, but which in truth and in fact and in reality was operated by the Southern National Hotel Corporation and The National Hotel Company. That the manager, clerks and employees of the Hotel Longview were employed by The National Hotel Company and were assigned to duty at the Hotel Longview. That the Texas Hotel Company of Longview while separately incorporated, was in truth and in fact merely a dummy corporation created and organized by The National Hotel Company and its predecessor for the purpose of holding title to the property known as the Hotel Longview and by the ostensible operation of said hotel, but that in truth and in fact The National Hotel Company and its predecessor actually did control and operate said Hotel Longview through the medium of its dummy corporation Texas Hotel Company," etc.

The question at issue involves the applicability to the facts of one or the other of two legal propositions. One is that stated in Davis v. Alexander, 269 U. S. 114, 46 S.Ct. 34, 70 L.Ed. 186, the particular facts there considered involving railway corporations, as follows: "Where one railroad company actually controls another and operates both as a single system, the dominant company will be liable for injuries due to the negligence of the subsidiary company * * *." A good statement of the other is to be found in the note to Berkey v. Third Avenue Ry. Co.,

N.Y.; 50 A.L.R. 599, 611, as follows: "It may be stated as a general rule that the fact that a corporation owns the controlling stock of another does not destroy the identity of the latter as a distinct legal entity, and unless it be shown that such separate corporate existence is a mere sham, or has been used as an instrument for concealing the truth or perpetrating fraud, or where the organization and control of the subsidiary are shown to be such that it is but an instrumentality or adjunct of the dominant corporation, no liability may be imposed upon the latter for the torts of the subsidiary corporation." Without considering the soundness of the first proposition, it is not believed to be applicable here. In order for it to be applicable, it would be necessary for, plaintiff to prove that the National Hotel Company in excess of its charter powers was engaged in the business of maintaining or conducting the Hotel Longview. We say, in *excess of its charter* powers because such powers were "to subscribe for, purchase, invest in; hold, own, assign, pledge and otherwise deal in, and dispose of, shares of capital stock, bonds, mortgages, debentures, notes and other securities, obligations, contracts and evidences of indebtedness of foreign or domestic corporations not competing with each other in the same line of business." In other words, its charter powers were limited to those strictly of a holding company. It had no authority to own or conduct a hotel business. If it had had such authority, then facts and circumstances in evidence might reasonably have been inferred as relating to such ownership or control of the business, which, in the absence thereof, cannot be said to justify any such inference. There was no evidence, we think, to show that National Hotel Company as a corporate entity did own or conduct a hotel business. It may be said as a matter so self-evident as to require no discussion, that there was no evidence to justify any inference to the effect that, within the meaning of the proposition above stated, the Texas Hotel Company of Longview was a "mere sham" or that it was being "used as an instrument for concealing the truth or perpetrating fraud." The theory set forth in plaintiff's pleading to the effect that the National Hotel Company, in order to escape liability likely to result from conducting a fire-trap hotel, organized the Texas Hotel Company of Longview as an insolvent corporation to effect such purpose, when considered in connection with the undoubted legal rights granted by our laws authorizing the incorporation of companies, is entirely without support by any of the evidence.

The only debatable question is: was there any evidence to support an inference that "the organization and control of" the Texas Hotel Company of Longview was such that "the corporation was but an instrumentality or adjunct of" The National Hotel Company, "as the dominant corporation?" We think it may be fairly said that every fact and circumstance in evidence relied upon to support the affirmative of that question was equally consistent, if not more consistent, with the inference that certain individuals and/or corporations, other than the Texas Hotel Company of. Longview, or the National Hotel Company, and who were referred to in some of the evidence along with the two last named companies, as the "Moody interests"; procured the incorporation and organization of both said companies, and neither one, through or as the instrumentality or adjunct of, the other. There is a total absence of evidence, we think, to justify an inference that the acts of directors, officers or employees of National Hotel Company with reference to the incorporation, organization or conduct of the business of the Texas Hotel Company of Longview, were the acts of the National Hotel Company rather than the acts of interests which had the potential power to control the National Hotel Company. Stated differently, under all the evidence we think it can no more certainly be said that the acts of persons who were directors, officers or employees of the National Hotel Company as relating to the Texas Hotel Company of Longview, were done in the capacity as such directors, officers or employees than in the capacity of agents or trustees of the individuals or corporations, if any, which as stockholders had the potential power to control the National Hotel Company.

There is no evidence that any person connected in any capacity with the National Hotel Company had anything to do with the incorporation or organization of the Texas Hotel Company of Longview. The Texas Hotel Company of Longview was incorporated February 27, 1931, while the National Hotel Company was incorporated February 18, 1933. It is claimed that the National Hotel Company was the

successor to Southern National Hotel Corporation and that the latter caused the incorporation and organization of said Hotel Company. Upon this particular point appellant contends, in effect, that there is no proof that National Hotel Company was such successor, in any such sense as would show a common identity. Appellee cites us to no evidence which, to our minds, proves that the National Hotel Company was in legal effect but a continuation in a different name of said Southern National Hotel Corporation, whose right to do business as a corporation had been forfeited.

■ Appellee discusses at length principles of equity, and insists that it is inequitable not to hold the National Hotel Company liable. We find ourselves unable to see that the question is properly ruled by principles of equity. The action is one for tort, a subject of common law jurisdiction. The only wrong, outside of the aforesaid wholly untenable theory that the National Hotel Company in order to escape liability incident to conducting a hotel business in a fire-trap building did so in the name of the other corporation, was that the Texas Hotel Company of Longview was insolvent. Its insolvency was amply accounted for by the fact that the fire had undoubtedly destroyed its chief assets. We do not believe there is any exception to the general rule of the non liability of a stockholder for the debts of a corporation based alone upon the fact of the insolvency of the corporation. If so, the rule of non liability would be of little or no practical effect since there could be little occasion to resort to the liability of stockholders, unless the debt could not be collected from the corporation.

■ It occurs to us that if any wrong or injustice is by any of the evidence shown to have been done the plaintiff, it results from the provisions of the law authorizing the incorporation of companies with the consequent effect of exempting the stockholders from personal liability for the debts of the corporation and further authorizing the incorporation of companies for the purpose of owning the stock of other corporations. It must be regarded as settled, at least in this State, that ownership by one corporation of the stock of another corporation does not render the former liable for the debts of the latter any more so than is the case with an individual who owns all the stock of a corporation. Southern Pac. R. Co. v. W. T. Meadors & Co., 104 Tex. 469, 140 S.W. 427. In that case the Supreme Court said [page 429]: "The fact that the Southern Pacific Company owned a greater part of the stock of the Galveston, Harrisburg & San Antonio Railway Company, and that the same person was president of both corporations, does not prove that the companies were partners, nor that they were agents of each other. * * * *The ownership of the stock in the Galveston, Harrisburg & San Antonio Railway Company imposed upon the Southern Pacific Company no greater liability nor different relation than it would if the same stock had been owned by an individual.*" (Italics ours.)

■ There can be no legal wrong consisting of the exercise in a legal manner of a legal right. Hence, an individual whose business is authorized to be incorporated may incorporate such business for the sole purpose of escaping individual liability of the owner for the debts of the corporation. Sayers v. Navillus Oil Co., Tex.Civ.App., 41 S.W.2d 506.

We are of the opinion that our conclusion hereinabove stated is in accord with the principles declared by the Supreme Court of the United States in Peterson v. Chicago, R. I. & P. Ry. Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841, wherein the Court overruled our State Supreme Court in Buie v. Chicago, R. I. & P. Ry. Co., 95 Tex. 51, 65 S.W. 27, 55 L.R.A. 861. Upon the authority of that decision our Supreme Court later in Atchison, T. & S. F. R. Co. v. Stevens, 109 Tex. 262, 206 S.W. 921, and Atchison, T. & S. F. Ry. Co. v. Ayers, 109 Tex. 270, 206 S.W. 922, overruled two decisions of Courts of Civil Appeals which had followed the Buie decision.

The question of whether the National Hotel Company, not authorized as a corporation to own and conduct a hotel business, in fact did so through the medium of another corporation, is very much analogous to the question of a foreign corporation not authorized to do business in Texas, in fact conducting such business through the instrumentality of another corporation. There is this difference, however: Where both the foreign and domestic corporations by their charter powers are authorized to conduct the same character of business it would be much easier to show that the foreign corporation was using a domestic corporation as

its servant or agent than would be the case of two domestic corporations, neither of which having the charter powers of the other. In State v. Humble Oil & Ref. Co., 263 S.W. 319, 325, Judge Blair, for the Austin Court of Civil Appeals, correctly interpreted the law, we think, as follows: "It seems to be well established, both by the Supreme Court of the United States and the Supreme Court of Texas that the ownership of the controlling amount of the capital stock by a foreign corporation is not doing business in Texas by such foreign corporation; that the holding of the majority interest in the stock does not mean the control of the active officers and agents of the local company doing business in Texas. The mere fact that the foreign company had the power to control the domestic company by the election of the directors, who in turn could elect or remove the active officers from the places already held, is not transacting business in Texas by such foreign company. In the case at bar, notwithstanding the Standard Oil Company of New Jersey owned the controlling amount of appellee's stock, still appellee, Humble Oil & Refining Company, was authorized to do business in Texas in its own name and maintained its separate legal entity, and did continue its business; and we must conclude that under the facts in this case the Standard Oil Company was not doing business within this state in the meaning of the anti-trust laws, and that appellee, Humble Oil & Refining Company, was not under the facts of this case the alter ego, or the means or agency by and through which the Standard Oil Company of New Jersey was doing business within the state."

In addition to Atchison, T. & S. F. Ry. Co. v. Stevens, supra, and Peterson v. Ry. Co., supra, the court cited Pullman's Palace Car Co. v. Ry. Co., 115 U.S. 587, 6 S.Ct. 194, 29 L.Ed. 499; People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas. 1918C, 537; Atchison, T. & S. F. Ry. Co. v. Weeks, 5 Cir., 254 F. 513; Walker v. Gulf & I. ,Ry. Co., 5 Cir., 269 F. 885; Meischke-Smith v. Wardell, 9 Cir., 286 F. 785.

■ It is, therefore, our conclusion that the trial court should have instructed a verdict in favor of the National Hotel Company.

The judgment against the defendants, either of. them, must, under the verdict of the jury, rest for a foundation upon at least one of the following grounds of negligence, namely: (1) Failure of the employees of Hotel Longview to immediately call the fire department upon discovering that the hotel was on fire; (2) negligence (presumed) on the part of the management of Hotel Longview in the operation of the porter's closet, under the exclusive control of said hotel management in which the fire that destroyed the hotel originated; and (3) negligence by the management of the hotel in permitting the fire to start.

■ If the last named ground of negligence be not considered as but a repetition of the second, that is, presumed negligence under the doctrine of res ipsa loquitur, then it is deemed sufficient to say that, in our opinion, there was no evidence that any of those responsible for the management of said hotel *permitted* the fire to start. The evidence is conclusive to the contrary. To permit a thing implies, knowledge. 48 C.J. 924, sec. 2; Texas & N. O: Ry. Co. v. Geiger, 55 Tex.Civ.App. 1, 118 S.W. 179. There was no pretense of any evidence that defendants, or their employees, had any knowledge of the fire until after it started.

■ We find ourselves unable to concur in the view of the plaintiff that the doctrine of res ipsa loquitur was applicable. A statement of that doctrine, which has been referred to in some of the cases as classical, was quoted in Washington v. Missouri, K. & T. Ry. Co., 90 Tex. 314, 38 S.W. 764, as follows [page 765]: "Where the particular thing causing the injury has been shown to be under the management of the defendant, or his servants, and the accident is such as in the ordinary course of things does not happen, if those who have the management used proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of care." It is here sought to apply this principle to injuries resulting from a sequence of events beginning, so far as shown, with the fire of unknown cause first discovered in a porter's closet in the hotel. It is clear from the allegations of plaintiff's pleading that the first cause in the sequence of events finally culminating in injuries to the plaintiff was the fire. However, in the effort to lay a basis in the pleading for application of the doctrine of res ipsa loquitur, it was alleged that the thing or

instrumentality, which, as required by said doctrine, must be "under the management of the defendant, or his [its] servants", was, not the fire—the thing causing the injury—but a porter's closet, in which the fire was alleged to have originated. In no true sense, we think, can it be said that the thing or instrumentality causing the injury, viewing the question most favorably to the contentions of the plaintiff, was the closet. Of a hotel fire of unknown cause it cannot be said that it is an accident which "in the ordinary course of things does not happen, if those who have the management use proper care." The mere occurrence of a fire does not give rise to a presumption of negligence. In order for the fire to be the *thing* or *instrumentality* causing the injury; and the injury to be an accident which "in the ordinary course of things does not happen if those who have the management use proper care", it seems to us, the fire would have to be designed as for some proper purpose. The duty would then exist upon the part of the hotel management to exercise ordinary care to see that the fire was safely confined, and not permitted to spread to inflammable parts of the building. As to the burning of a building, so caused, it would do no violence, in such case, to the language or reasoning of the doctrine of res ipsa loquitur, to regard the fire as the thing causing the injury and from such known cause of the burning of the building it could be established that the accident was such as would not occur if those having the management of the fire used due care. It is, therefore, our conclusion that the fire of unknown cause which undoubtedly was the thing causing the injury cannot, for the purpose of applying the doctrine of res ipsa loquitur, be regarded as the same thing as the porter's closet.

In a sense, the doctrine of res ipsa loquitur seems to require that the cause of the injury be shown by the evidence. Not, of course, the particular negligent act or omission; but it is necessary to show the cause in a general way as a means of making required proof of the fact that the thing causing the injury was under the exclusive control of the defendant and was of a nature that in the ordinary course of things would not happen with the exercise of due care.

In Texas & Pac. Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S.W. 3, relative to the conclusion of plaintiff in that case that the doctrine of res ipsa loquitur was applicable, the Supreme Court, after quoting the doctrine as above set forth, said [page 4]: "This would probably be an eminently just conclusion if the assumption upon which it is founded were just, viz., that the evidence shows that the particular thing which caused the death in question was under the exclusive management and control of the defendant. The derailment of the car, unexplained, is a fact which by its very nature may be admitted to suggest something amiss, a want of proper precaution somewhere. *But what was the cause of the derailment? Until we can answer that question, we think it must be admitted that it is not shown by the evidence that the particular thing which caused this injury was in the exclusive management of the defendant.* If everything that could reasonably be assigned as the cause of the derailment had been wholly under the control of servants of defendant other than the deceased himself, it might be inferred that the cause, whatever it was, consisted in some negligent act or omission of theirs. But we have a track, with its switches, and a motor car, defects in, or negligent management of, any of which might have brought about that which happened. The deceased himself had a hand in the management of the switches, and also in controlling the movements of the car, in so far as it depended on the giving of signals. Negligence is not to be imputed either to him or to the defendant's other servants without proof; and a state of facts *in which the cause of the accident cannot be found* does not warrant a conclusion that one, rather than the other, produced it." (Italics ours.)

We have quoted the above in order to lend emphasis to our conclusion that the doctrine cannot be applied as here where, although the fire was the thing causing the injury, the thing in the exclusive management and control of the defendants, according to both pleading and proof, was a porter's closet, manifestly in no sense the cause of the injury.

The only remaining basis of the judgment is the finding of the "failure of the employees of Hotel Longview to immediately call the Fire Department upon discovering that said hotel was afire." As to this ground of negligence there are serious questions as to whether there was any evidence to show: (1) The fact of such failure, (2) whether, if so, it was negligence, and (3) if negligence, was a proximate case of the injuries.

■ Was there evidence to raise the issue that no employee of Hotel Longview, immediately after the fire was discovered, notified the Fire Department? There was direct testimony of two witnesses that Clinkscales, the clerk on duty, did call the fire department immediately upon discovering the ·fire. There was other evidence of a circumstantial nature strongly corroborative of the evidence of said two witnesses. By the clock at the fire station, the alarm was turned in at 11:56 p. m. By stipulation of the parties the time the fire department was called was 11:56 p. m. There was no direct or positive evidence that the fire was not discovered immediately before 11:56 o'clock. The crucial fact which plaintiff had the burden to establish in order to . raise the issue of delay was the time the fire was discovered by the employees. In effect, the burden of proof was upon the plaintiff to establish by a preponderance of the evidence that the fire was discovered sometime before 11:56 p. m. In her counter proposition, plaintiff includes as an element thereof, a delay of ten minutes. Plaintiff testified that when she discovered the fire (claimed to have originated in a closet in the east wing of the hotel on the first floor) the flames had already reached her room door, in the west wing, on the third floor, and that the time, according to her watch, which was lost in the fire, was "about" 11:35 p. m. All the facts and circumstances in evidence designed and relied upon to show that the fire was discovered by the hotel employees earlier than immediately before 11:56 was dependent upon the assumed accuracy of plaintiff's watch and the estimates of witnesses of the time of the happening of events occurring under the confusion and excitement of a great conflagration. In our opinion, it does not rise to the dignity of probative evidence.

If, however, it should be granted that there was evidence to raise the issue of delay in calling the fire department and that such delay was negligence—the latter a subject to be noticed later—we feel even more certain that there was no evidence of any probative value to raise the issue that such delay was a proximate cause of plaintiff's injuries. Taking plaintiff's own estimate of the delay as ten minutes, and considering the character of rescue work that was done after the firemen did arrive, and that which would have been required to be done in any event, it can at most be said to be no more than a mere guess or surmise that had the fire department been called ten or more minutes earlier than it was called, the plaintiff would have been rescued without injury.

■ In considering what is claimed to constitute evidence of negligence and proximate cause, it is not only proper but necessary to consider the allegations of ·plaintiff's petition, since no evidence could be available to support such issues which was contrary to the facts as alleged in said pleadings. It was alleged in general terms that the above three grounds of negligence, and others not submitted to the jury, or not found by the verdict of the jury, were each a proximate cause of plaintiff's injuries. It was alleged, not in the alternative or by separate count, that "on the night of March 29, 1934, a fire broke out on the first floor of said hotel and *was immediately discovered* thereafter by, and made known to, said defendant's night clerk and other employees or servants known as bell boys. .* * * That upon the discovery of said fire the defendant's agents, servants and employees instead of warning this plaintiff * * * and immediately * * * calling the fire department ·* * * by turning in a fire alarm, undertook to extinguish the fire themselves *and delayed calling the fire department* for almost thirty minutes after the discovery of the fire. * * * Defendants did purport to offer some of the fire protection so needed in a building of the type and construction used by them for hotel facilities * * * by having therein on first or second floor a large water pipe and fire hose connection which *was negligently permitted to remain disconnected and out of order and in such a condition as to be absolutely useless in case of fire,* which condition was well known to defendants *or should have been known to them * *. This said fire hose connection was sufficiently close* · to the place where this fire originated that *had it been in good working order, the fire could have easily been extinguished with little or no damage to the hotel and the resulting injuries to this plaintiff;* that in fact an effort was made by some person then in the lobby of the hotel, whose name is unknown to plaintiff, to so use this hose and fire apparatus when the .fire was discovered, but that the apparatus was out of order, the hose connection unattached to the pipe and the water could therefore not be thrown· on the fire and· the fire extinguished before gaining any headway." (Italics ours.) These al-

legations which, of course, are to be taken as true in so far as they may deny or limit plaintiff's right to a judgment, reveal some very important facts. They show, in the first place, that if it be granted that there was some delay in calling the fire department such delay was not negligence. If the employees did not know that the fire fighting apparatus, immediately at hand, was out of order (and there was no allegation that they did, the allegation that they should have known being treated as the equivalent that they did know and the very fact that they tried to operate it being some evidence that they did not know it), why call the fire department, when, as averred by plaintiff, the fire "was immediately discovered after it broke out" and "the hose was sufficiently close to the place where this fire originated that had it been in good working order the fire could easily have been extinguished with little or no damage to the hotel and the resulting injuries to plaintiff?" Here plaintiff alleges facts which forbid any inference of a breach of duty to the plaintiff by delaying the calling of the fire department, at least until it was discovered (if that was a fact) that the fire apparatus, ready at hand, in the building was out of order. A strong case of negligence would have been shown had the hotel clerk consumed valuable time in calling the fire department, thereby delaying use of the ready means at hand for easily extinguishing the fire, if it could have been shown that the loss of such time resulted in the fire getting out of control and causing the injuries. The allegations of plaintiff's petition amount to an implicit contradiction of the allegation that the failure to call the fire department, immediately, was negligence or the proximate cause of the plaintiff's injuries. The averred negligence in permitting the fire apparatus to be out of order was not alleged as a ground of recovery but apparently only by way of a reason why the night clerk did not immediately call the fire department. In our opinion, it amounts to a complete acquittal of the clerk from the claim of any negligence in such respect.

It is deemed unnecessary to discuss many of the other questions presented, or any of them at any considerable length, since they are not likely to arise upon another trial.

There exists no cause of action, we think, in favor of a guest of a hotel against the operator of a hotel to recover damages sustained in a hotel fire upon a claim of negligence based upon the fact alone that the hotel is not fire proof. Baugh v. McCleskey, Tex.Civ.App., 292 S. W. 950.

Plaintiff's pleadings were subject, we think, to exception on the ground that many of the allegations regarding the fire-hazardous nature of the materials entering into the construction of the hotel were immaterial to any real ground of possible liability and were of a very prejudicial nature.

Likewise, the argument of plaintiff's counsel to the jury stressing the hazardous nature of the hotel construction with reference to the inflammable materials constituting essentials of such construction, not being material to any real ground of liability was undoubtedly well calculated to prejudice the rights of the defendant.

The testimony of Guy F. Holder, one of the bell boys in the hotel, to the effect that prior to the fire there had been another fire in the hotel growing out of a mattress catching on fire and that the clerk had instructed the bell boys to be sure there was really a fire before they woke up people, should, in our opinion, upon the objection made to same, have been excluded. The testimony was not relevant and was well calculated to prejudice defendants.

In view of the fact that we have virtually sustained an assignment that the court erred in overruling a motion for an instructed verdict, there is room to question whether we should not render judgment for both defendants as we do for one of them. If, however, our conclusions are correct, they tend to show that the case from the standpoint of the plaintiff, was not developed upon the correct theory of law. Williams v. Safety Cas. Co., 129 Tex. 184, 102 S.W.2d 178. It is, therefore, our conclusion upon the whole case that the peremptory instruction as to National Hotel Company should have been given, and the judgment as to it should be reversed and judgment rendered that plaintiff take nothing; that the judgment as to defendant Texas Hotel Company of Longview should be reversed and the cause remanded. It is accordingly so ordered.