**TEXAS HOTEL CO. OF LONGVIEW et al.
v. COSBY et al.**

No. 5391.

Court of Civil Appeals of Texas.
Texarkana.

July 21, 1939.

Rehearing Denied July 27, 1939.

Wynne & Wynne and Henry H. Harbour, all of Longview, Touchstone, Wight, Gormley & Price, of Dallas, and Frank S. Anderson, of Galveston, for appellants.

Harrington & Harrington, Hurst, Leak & Burke and Robert E. Mitchell, all of Longview, for appellees.

WILLIAMS, Justice.

This is a personal injury suit by two paying guests of a hotel, grounded upon the tort of negligence, growing out of the destruction by fire of Hotel Longview. Appellees, R. W. Cosby and Elizabeth D., joined pro forma by her husband, D.

M. Wallace, sued to recover damages for injuries received by Cosby and Elizabeth D. Wallace, who were then husband and wife, in jumping from a third-story window of the west wing of the hotel during the progress of the fire. Recovery was sought against the Texas Hotel Company of Longview upon the theory that this corporation owned and operated the hotel in question. Recovery was also sought against the National Hotel Company upon the theory that this corporation owned the above company and had created it as a dummy corporation, and in fact was operating the hotel through such an agency.

In response to special issues the jury found: That on March 29, 1934, R. W. and Elizabeth D. Cosby each sustained injuries to the body on the occasion of this fire; that on that date the Texas Hotel Company was not in good faith running and operating said Hotel Longview as an independent corporation; and was the agent of and under the management and control of the National Hotel Company in the operation of Hotel Longview. Further, that "the employees of Hotel Longview failed to immediately call the fire department upon discovery of the fire;" that such failure was negligence and a proximate cause of plaintiffs' injuries. The jury also found that "upon discovery of the fire by the employees of Hotel Longview they failed to warn the plaintiffs"; that such failure to warn the plaintiffs was negligence and a proximate cause of the injuries. Further, the jury found "that the fire originated in the porter's closet under the stairway on the east side of the lobby"; that said closet "was under the exclusive control of the Hotel Longview, its agents, servants or employees;" that there was negligence on the part of the management in the operation of said porter's closet; and this was a proximate cause of the injuries; that the management permitted the fire in question to start in the hotel; that permitting the fire to start was negligence, and such was a proximate cause of the injuries; and that the starting of the fire on the occasion in question was not the result of an unavoidable accident. In this case the jury found that the fire was sudden and fierce, but that this was not the sole and proximate cause of the injuries. The issue of contributory negligence was found in favor of the plaintiffs. The question of assumed risk was not raised. No violation of any statutory fire regulation is involved.

Judgment was entered against both companies, jointly and severally, for $15,000.

The allegations in the pleadings and the theory upon which plaintiffs sought recovery against the National Hotel Company in the instant case are the same as detailed and discussed in National Hotel Company v. Motley, Tex.Civ.App., 123 S. W.2d 461. The evidence upon this question was the same. It is also observed that the jury's findings upon this theory of the cause of action are identical with those detailed in the Motley case. The Eastland Court of Civil Appeals in an exhaustive opinion by Justice Funderburk discussed the liability of this company under that record and concluded that the trial court should have instructed a verdict in favor of the National Hotel Company. The Supreme Court has approved the judgment there rendered by dismissing application for writ of error, and such action concludes this question here. Hence the judgment as to National Hotel Company is reversed and now rendered that plaintiffs take nothing as to this company.

Relative to the duty of the Texas Hotel Company, the innkeeper, to the safety of its guest, in 32 Cor.Jur. Sec. 68 page 561, it is stated: "While an innkeeper is not an insurer of the safety of his guests, it is his duty to take at least reasonable care of the persons of his guests so that they may not be injured while in the inn by want of such care on his part." Or as stated in Baugh v. McCleskey, Tex.Civ. App., 292 S.W. 950, 952: "* * * in order to charge the innkeeper with liability for injury to the person * * * negligence on the part of the innkeeper must be shown in connection with the very circumstances which produced the injury." See also Parker v. Kirkwood, 134 Kan. 749, 8 P.2d 340; Bell v. Daugherty, 199 Iowa 413, 200 N.W. 708, 37 A. L.R. 154, and authorities there cited.

We can conceive of no reason why the innkeeper's common-law duty to take at least reasonable care of the persons of his guests, invitees, so that they may not be injured in the inn for want of such care on his part should not include such a duty upon the discovery of a fire on the premises by the innkeeper. Whether such innkeeper in the discharge of his duty could have seasonably warned the guest or attempted to warn him in any particular manner, or could have sea-

sonably called or attempted to secure assistance to extinguish the fire, or attempted with the means at hand to quench the fire, or should have pursued one or the other mode first or all conjunctively, would naturally depend upon all the facts and circumstances then existing in any given emergency. And thus presents the question if the innkeeper failed to exercise such care as a person of reasonable prudence and foresight would have exercised under the same or similar circumstances. Parker v. Kirkwood, supra.

■ Upon the questions of failure to immediately call the fire department and the failure to warn plaintiffs of the fire, the pleadings and evidence in this case are practically the same as is reflected in the opinion in the Motley case. It was alleged in the instant case, as in the Motley case [123 S.W.2d 468], "that upon the discovery of said fire the defendant's agents, servants and employees instead of warning this plaintiff * * * and immediately * * * calling the fire department * * * by turning in a fire alarm, undertook to extinguish the fire * * *," and the petition further alleged the presence of fire hose on the premises, the attempted use of same to quench the fire and the alleged defective condition of the fire hose and connections.

It is apparent from this record that a disturbance or commotion arose in the lobby on the discovery of the fire, followed by the noise of scurrying feet and excited voices, in an attempt to quench the fire. This noise increased with the shouts of fire in the hallways, the screams of some of the guests, and knocks upon doors. Plaintiff R. W. Cosby was awakened by the screams of his wife. According to the testimony of the three bell boys, they first attempted to use the fire extinguishers and then proceeded to run through the halls, knocking on doors and shouting, "Fire!" One bell boy was trapped on the second floor and escaped through a window. Smoke prevented another from reaching the third floor. The evidence does not disclose if all three boys attempted to quench the fire or what time was spent in this effort. There is evidence to the effect that the housekeeper knocked upon doors on the third floor, shouting "Fire!"

Texas has enacted no statutory requirement for the installment of fire gongs or other equipment by which an immediate general alarm of danger could be sounded throughout a building of this character. In the absence of fire gongs or other equipment for sounding an immediate alarm throughout the hotel no more effective or quicker means to warn the guests was at the disposal of the employees. The hotel was equipped with a P. B. X. switchboard which the night clerk testified he used to call for help from the employees then in the hotel and while proceeding to call other occupants the fire disconnected the electric current. Occupants of seven rooms testified that their telephones did not ring. Occupants of three rooms say theirs did ring. This record does not reveal if all the 102 rooms in the hotel, or what given number, could be reached over this switchboard at one time. Neither is one able to ascertain the period of time that would have been consumed to notify each room. If the time to give the warning by telephone was limited, then should the employee have begun to notify first the occupants in the east wing or those in the west wing? The flames spread rapidly into both wings. The fire was sudden and fierce. Little of the contents of the hotel was saved. The observations detailed under the foregoing situation in connection with the equipment at hand, the time-element involved, and the results that may have been accomplished, are so speculative that such alleged failure to use the telephone, if negligence, would not support a jury's finding that it was a proximate cause of plaintiffs' injuries.

The fire department received notice of this fire at 11:56 p. m. Two fire trucks arrived within two or three minutes after the call was received. The night clerk testified that he immediately called the fire department over a direct wire upon the discovery of the fire. He is corroborated to the extent that he was seen to pick up the telephone at that time. Two of the guests who escaped from the second floor in their sleeping garments testified that when they reached the lobby the clerk, Clinkscale, was "fooling with the fire extinguisher" across the lobby from the telephone. The estimate of some of the occupants as to the time which elapsed between the disturbance arising from the discovery of the fire and the arrival of the first fire trucks corroborates Clinkscale's testimony. Whereas, there is testimony of other occupants who likewise estimated the time intervening as being

as much as twenty minutes. To set out other evidence bearing upon this phase of the case would be practically a repetition of that detailed in the Motley opinion. However, the alleged delay in calling the fire department was supported by the plaintiff in the Motley case as to the exact time (by her watch) when she discovered the fire.

■ We do not deem it necessary to determine if the evidence would support a finding that defendant failed to immediately notify the fire department, or if such failure was negligence. Because, in the language of Justice Funderburk in the Motley opinion, "* * * considering the character of rescue work that was done after the firemen did arrive and that which would have been required to be done in any event, it can at most be said to be no more than a mere guess or surmise that had the fire department been called ten or more minutes earlier than it was called the plaintiff would have been rescued without an injury." And we add, the jury did not find that there was a delay of ten minutes.

■ The evidence dealing with the operation of the porter's closet is meagre. According to the porter's testimony, he kept in this closet his push-broom, dustpan, some O'Cedar polish, and a gallon tin can of floorsweep. He further testified that there was no waste kept in there, and that he carried the sweepings from the lobby and dumped same into a trash can on the outside of the building. The evidence most favorable to plaintiffs' claim, that this closet was negligently operated, consists of the testimony of a witness who stated, "There was a bunch of trash and stuff they would sweep up, and all their brooms and things like that, and floorsweep. All I know was in there was those brooms and mops and there was a box where they swept their floor up. That is all I know was in there." Is O'Cedar or floorsweep inflammable or combustible? What did the "trash and other stuff" consist of, and how much of it was there? Were these materials situated in containers, and if so, what kind? Were any of these items placed near an open flame or heat? The testimony in this record does not answer any of these questions. The evidence is silent. The mere presence of the above items in the closet is not sufficient to charge this defendant with negligence. Kress v. Lane Bros., 187 Iowa 518, 171 N.W. 571, 5 A.L.R. 1376. As stated in Bell v. Daugherty, supra, "to hold the appellee liable in this case upon the theory that he was negligent in permitting the boxes and rubbish described by witnesses to accumulate in the basement of the hotel would be to make him practically an insurer of the safety of his guests." [199 Iowa 413, 200 N.W. 709, 37 A.L.R. 154.]

■ It is not contended in the pleadings or by evidence that defendant kindled the fire or even knew of it until it was discovered by one of its employees. The evidence does not indicate the cause of the fire. The mere occurrence of a fire on a person's premises does not give rise to a presumption of negligence. Baugh v. McCleskey, supra; Weeks v. McNulty, 101 Tenn. 495, 48 S.W. 809, 43 L.R.A. 185, 70 Am.St.Rep. 693; Mitchell v. Hotel Berry Co., 34 Ohio App. 259, 171 N.E. 39; Pfeiffer v. Aue, 53 Tex.Civ.App. 98, 115 S.W. 300, 301; Exporters & Traders' Compress & Warehouse Co. v. Schulze, Tex.Com.App., 265 S.W. 133; 11 R.C.L. p. 940, Sec. 1, and page 955, Sec. 13. Under the facts in this record as more fully discussed and concluded by the Eastland court in the Motley case, and for the additional reasons as expressed in this opinion, the doctrine of res ipsa loquitur is inapplicable.

We do not deem it necessary to discuss other propositions and assignments of error presented. They are not likely to occur upon another trial. Following National Hotel Co. v. Motley, supra, and upon the additional observations herein made, it is concluded that the judgment against the Texas Hotel Company of Longview be reversed and the cause remanded; and as to the National Hotel Company, the judgment be reversed and here rendered that the plaintiffs take nothing.