**J. B. BURROUS, dba Upshur House Hotel, Appellant,**

**v.**

**David E. KNOTTS et al., Appellees.**

**No. 621.**

Court of Civil Appeals of Texas, Tyler.

June 15, 1972.

On Rehearing July 6, 1972.

Ritter, Nichols & Thibodeaux, Otto A. Ritter, Longview, for appellant.

Welby K. Parish, Gilmer, for appellees.

McKAY, Justice.

Appellees brought suit against appellant for damages for the death of David H. Knotts in a hotel fire. Appellees are the children and heirs of the deceased, and appellant was the owner of the Upshur House Hotel in Gilmer. Trial was had before a jury and judgment was rendered for appellees based upon the verdict of the jury for $40,000 in damages plus $1140 for burial expenses. Appellant brings this appeal on fourteen points.

Appellees alleged that appellant (1) failed to provide adequate fire escapes; (2) failed to maintain and clean the air conditioning and heating unit to prevent the hazard of fire; (3) after discovering the fire, failed to warn deceased immediately upon discovery; and (4) failed to call the fire department immediately upon discovery of the fire. Appellees claimed each of the above was negligence and a proximate cause of the damages alleged.

The jury found that appellant (1) failed to clean the air conditioning and heating unit in such a way to prevent the hazard of fire; (2) failed to provide an adequate fire escape as a means of escape from the second story of said hotel in the event of fire; (3) failed to provide and equip the hotel with more than one adequate fire es-

cape; (4) failed to provide and equip the hotel with a fire alarm system; and (5) failed to warn deceased immediately upon discovery of the fire. The jury found that each of these acts was negligence and a proximate cause of the occurrence in question, and that $40,000 would have fairly and reasonably compensated the deceased for his conscious physical pain and mental anguish suffered before his death.

■ Appellant contends by his first four points that the trial court erred in submitting each of the five sets of issues found by the jury because each one does not present an issue or cause of action upon which appellees could recover, and that in addition, by point 4, contends there was no evidence to support submission of Issues 5, 5a and 5b, and the jury's answer to each of those issues was against the great weight and preponderance of the evidence. We have carefully reviewed the entire record and have concluded that the answers of the jury to Issues 5, 5a and 5b are supported by the evidence, and that appellant had a duty to warn David Knotts immediately upon discovery of the fire; that he failed to do so; and that such failure was negligence and a proximate cause of the death of Knotts.

■■ An innkeeper is not an insurer of the safety of his guests, but he does owe them a duty to furnish and maintain a safe place in proper condition. His responsibility is limited to the exercise of ordinary or reasonable care, and proof must be made of negligence and proximate cause. An innkeeper who discovers a fire on his premises must exercise such care as a person of ordinary prudence would exercise for the safety of his guests, and he has, ordinarily, the duty to warn the guests. 31 Tex.Jur.2d, Sec. 4, Pp. 386–388; Sec. 5, P. 389; Texas Hotel Co. of Longview v. Cosby, 131 S.W.2d 261 (Tex.Civ.App., Texarkana, 1939, writ dismissed, judgment correct); Smith v. The Texan, 180 S.W.2d 1010 (Tex.Civ.App., Fort Worth, 1944, writ ref. w. m.).

■ We appreciate the fact an innkeeper would not be liable for a failure to warn where there was not sufficient time to do so. The record here, however, shows facts which we believe reasonably demonstrate that there was sufficient time to warn, and that the facts and circumstances in this case may be distinguished from Texas Hotel Co. of Longview v. Cosby, supra; Texas Hotel Co. of Longview v. Jones, 131 S.W.2d 265 (Tex.Civ.App., Texarkana, 1939, n. w. h.), and National Hotel Co. v. Motley, 123 S.W.2d 461 (Tex.Civ. App., Eastland, 1939, writ. dis., judgment correct).

At approximately 7 a. m. on January 8, 1969, Hub Owen, night clerk, was on duty at the desk just off the lobby of the Upshur House Hotel. A Mrs. Morris came by the office and remarked that she believed "you all have a fire," and that she smelled paper or something burning. Owen testified he did not then smell any smoke and told her the fire was in the kitchen stove. Owen testified that only one or two minutes later he smelled what he took to be smoke from burning paper and that he got up to investigate where it was coming from. He went directly to the lobby from the hallway where he saw some fire coming out of the men's restroom. Owen described it as "a complete roll of fire, just a ball of it looked like, just coming through." He said it was burning "pretty good" when he saw it. He then ran back to the office and called the fire department. He then came out of the office and because there was so much fire he went out of the building at the south door instead of the west door and moved his pickup truck from in front of the hotel because the fire trucks would need the space. Owen further testified that when he first saw the fire he yelled "for everybody to get out of here because this thing is on fire." He said when he came back to the lobby "I saw I couldn't get up there, I couldn't get anywhere, and the lobby was on fire and the fire was—had already hit the upstairs steps and that was on fire, so

I couldn't get upstairs." Owen knew there were hotel guests upstairs and knew which room Knotts stayed in but did not know whether Knotts was in his room.

Knotts had a private telephone in his room, but it did not go through the hotel office. However, there was a telephone in the hallway some twenty to thirty feet from Knotts' room. Knotts'. body was found lying on the floor of his room between his bed and the door to the hallway, and the door moved against his body when it was opened. He had on his trousers and a T shirt undershirt. His shirt was beside him. He had some burns on the top side of his body. When asked, "(a)fter you called the fire department did you ever make any effort to ring that telephone upstairs?", Owen answered, "(n)o, sir, I was trying to get out of there."

Verlie Odom, a cook who was in the kitchen, smelled smoke from paper burning and checked around the kitchen and did not find it. She did not tell Owen, but she said others discovered the fire while she was looking for it.

Willie Wheeler, a janitor, was working in the kitchen when a waitress told him she smelled paper burning. He looked in the kitchen and dining room and saw nothing but smelled paper burning, and then went back to work in the kitchen. He was told again there was paper burning somewhere and he again looked and when he got to the lobby, "it blew out." He said the flames were coming out of the men's restroom and he began to yell, "(e)verybody get out, fire, fire, fire, fire." He further said he tried to go upstairs but when he started up the stairs "the fires commenced to meeting me and I turned around and come back." He later got a ladder from a fire truck, put it up to the window in Knotts' room, and climbed up and saw Knotts lying on the floor.

Appellant Burrous testified, "we could always call up there and he (Knotts) could hear the phone and answer it."

The hotel was a two-story building with guest rooms on both floors. There was a meeting room or banquet room above the second floor which was used rarely, but there were no guest rooms except on the first and second floors. There was no fire alarm system or warning device and there were no fire escapes. There was a stairway from the lobby to the second floor and there was an outside stairway on the back of the building at the end of the hallway on the second floor. Knotts' room was a few feet from the top of the stairway located on a front corner of the building. There was an awning three or four feet below two windows in Knotts' room which faced on the street, and the awning was eight to ten feet above the ground.

There is no statutory authority for fire escapes to be provided on a two-story hotel. Art. 3955, Vernon's Ann.Civ.St. Nor is there a requirement for a fire alarm or warning device to all rooms in hotels. The question here is whether the appellant's servants and employees failed to exercise such care as a person of reasonable prudence and foresight would have exercised under same or similar circumstances.

It is difficult to ascertain the time elapse by the sequence of events. However, Mrs. Morris told Owen she believed there was a fire because she smelled paper burning. He made no investigation. Owen says in one or two minutes he smelled smoke and got up to investigate. Had he acted on the warning given by Mrs. Morris, Knotts likely could have been warned in time to escape. Had the time elapse been longer, he would have had more time to warn before the fire came out of the men's restroom. When first asked about the sequence of his actions after discovery of the fire Owen said he called the fire department, then went outside to move his pickup, and when he returned to the lobby the stairway was burning so much he could not go up. He later testified the stairway was also in that condition before he went out to move his pickup.

Willie Wheeler was told by a waitress that she smelled smoke and he looked for it in the kitchen and dining room and smelled it himself but he did not locate it nor did he tell Owen or anyone else. The cook, Verlie Odom, smelled smoke and looked for it in the kitchen but did not find it. She did not tell Owen or others.

Knotts was on the second floor with windows on the front overlooking an awning three or four feet below the windows. If it could be said there was not sufficient time for Knotts to have safely descended the stairway, had he been alerted by some means he might have been saved by dropping onto the awning since he apparently died from smoke inhalation. The death certificate was signed by Dr. M. S. Ragland and shows the immediate cause of death to be "acute burn and smoke inhalation, DOA" and the interval between onset and death to be ten minutes. This was the opinion of the doctor since he did not see Knotts at the time of onset, and Knotts was dead on arrival at the hospital where the doctor made his examination.

After review of all the facts and circumstances shown by the record, we believe that the evidence was sufficient to support the finding of the jury that there was a failure to warn the deceased.

By Point 5 Appellant contends there was no evidence to support the damage issue [1] for conscious physical pain and mental anguish suffered before deceased's death, and that the jury's answer is against the great weight and preponderance of the evidence. By Point 8 complaint is made of the action of the trial court in allowing the introduction of the death certificate of the deceased. We overrule these points.

■ The death certificate meets the requirements of Article 4477, Rule 54a, V.A.

T.S. This court held in Reserve Life Insurance Company v. Estate of Shacklett, 412 S.W.2d 920, 1967, writ ref. n. r. e.: "We find the law in this State to be that such certificates are not only admissible in evidence, but are prima facie evidence of the facts therein stated." See also American Nat. Ins. Co. v. Valencia, 91 S.W.2d 832 (Tex.Civ.App., El Paso, 1936, writ. dis.); Buchanan v. American National Insurance Company, 446 S.W.2d 384 (Tex. Civ.App., El Paso, 1969, writ ref. n. r. e.).

While it is true there was no evidence other than the death certificate as to how long the deceased lived or how long he had conscious pain and suffering, the facts and circumstances in the record indicate he would have suffered some conscious pain and mental anguish. The ten minute entry on the death certificate would be prima facie evidence he lived that long before death, but it does not mean that it is prima facie evidence that he suffered *conscious* physical pain and mental anguish for the entire ten minute period. There is no evidence in the record to contradict the prima facie character of the death certificate.

■ Appellant's Point 6 complaining of the trial court's instruction to the jury on unavoidable accident and failure to give appellant's requested issue and instruction is overruled. The instruction given the jury was, "(i)n this case the defendant contends that the occurrence in question was the result of an unavoidable accident. The occurrence was an unavoidable accident if it happened without the negligence of either of the parties to the suit."

We believe the instruction properly follows the opinion of our Supreme Court in Yarborough v. Berner, 467 S.W.2d 188 (Tex.Sup., 1971).

Point 7 complains that the trial court failed to give appellant's requested issue

---

1. "ISSUE NO. 6 .
"What sum of money, if any, do you find from a preponderance of the evidence would have fairly and reasonably compensated David Knotts for his conscious physical pain, if any, and mental anguish, if any, suffered before his death, as a result of the occurrence in question?
"Answer in dollars and cents, if any.
"Answer: $40,000 Forty thousand."

asking whether the fire was started by an unknown origin. In view of our disposition of this appeal we believe this point is without merit. The failure to warn issue is not related to the cause of the fire.

■ By Point 9 appellant complains that the injection of insurance into the case was reversible error. We overrule this point. Appellees' counsel called appellant Burrous as his first witness without denominating him as an adverse party witness, and was inquiring about the square footage in the hotel. Appellees' counsel asked, "(n)ow, going back to my original question about the square footage in the hotel, did you ever get that figure, Mr. Burroughs (sic), that you promised us at the time that you would?", and his answer was, "(i)t seems to me that I did and I—it seems to me like I had the insurance agent to get it, and I don't recall—." While the reference to his insurance agent was made by appellant himself while a witness, we hold it was a casual and inadvertent reference to insurance and is not reversible error. Atchison, Topeka and Sante Fe Railway Company v. Acosta, 435 S.W.2d 539 (Tex.Civ.App., Houston 1st, 1968, writ ref., n. r. e.). Not every mention of insurance requires the setting aside of the jury's verdict. Marchyn v. Silva, 455 S.W.2d 442 (Tex.Civ.App., San Antonio, 1970, writ ref., n. r. e.). Appellant's answer did not disclose there was liability insurance, but if it could be so construed appellant could not take advantage of his own voluntary statement. Flatt v. Hill, 379 S.W.2d 926 (Tex.Civ.App., Dallas, 1964, writ ref., n. r. e.).

■ We hold the introduction of some of deceased's clothing found in his room, if error, was not reversible error. Rule 434, Texas Rules of Civil Procedure. We also hold that the inadvertent statement by the witness Hill that there was "more than one man there in this hotel upstairs," in violation of a granted motion in limine is not reversible error. Rule 434, supra. Points 10 and 11 are overruled.

■ Appellant claims the trial court erred in failing to grant his request for an order of remittitur of at least $35,000. The only proof with reference to the conscious pain and suffering was contained in the death certificate where the doctor indicated Knotts lived ten minutes from the onset. It is reasonable to conclude from the circumstances that Knotts suffered some conscious physical pain and mental anguish. It is also reasonable to conclude from the circumstances that he was not conscious for the entire ten minutes but would have lost consciousness at some point before death. Recovery can be had only for pain consciously experienced, and events subsequent to unconsciousness are not compensable. Sharpe v. Munoz, 256 S.W.2d 890 (Tex.Civ.App., San Antonio, 1953, writ ref., n. r. e.). The determination of the damages for pain and suffering lies primarily with the jury but is subject to correction by the courts for abuse or passionate exercise, but it is not necessary to show passion or prejudice or improper motivation to order a remittitur. Texaco, Inc. v. Forester, 456 S.W.2d 196 (Tex.Civ.App., Beaumont, 1970, writ ref., n. r. e.); Sharpe v. Munoz, supra.

■ We have reached the conclusion that the jury failed to distinguish between the periods of consciousness and unconsciousness of deceased and therefore rendered an excessive verdict. We find that the damages are excessive by $30,000 and that $10,000 constitutes reasonable compensation for damages suffered by deceased for conscious pain and suffering. Rule 440, T.R.C.P.; Wichita Valley Ry. Co. v. Williams, 116 Tex. 253, 288 S.W. 425 (1926); Sharpe v. Munoz, supra.

By Point 13 appellant says the argument of appellees' counsel was improper and inflamed and prejudiced the jury against appellant. Whether it could be said that some

of the argument objected to could not be cured by the court's instruction it is our opinion that such argument may have contributed to the awarding of excessive damages by the jury. Since we are ordering a remittitur we conclude that such argument would not be reversible under such circumstances. Rule 434, supra. Point 14 is also overruled.

If within fifteen days appellees remit the sum of $30,000 the judgment will be reformed and affirmed; otherwise, said judgment will be reversed and remanded.

Affirmed on condition of remittitur.

### On Rehearing

Appellant's Motion for Rehearing overruled.

Appellees' Motion for Rehearing overruled; and appellees having failed, within the time prescribed, to file the remittitur suggested, the judgment of the trial court is reversed and the cause is remanded to the trial court.