HERBERT L. BLAIR, Adm'r.

*vs.*

LEWISTON, AUGUSTA AND WATERVILLE STREET RAILWAY.

Kennebec.    Opinion February 17, 1913.

*Accident.  Contributory Negligence.  Damages.  Due care.  Evidence.
Exceptions.  Instantly killed.  Negligence.  Nonsuit.
Passenger.  Question for Jury.*

1.   The contention of the defendant that Blair's act in leaving the position he had taken back against the rear railing of the car and beside the controller and stepping out upon the open platform between the gateway, a negligent act contributing to the accident is not maintainable.

2.   When passengers are permitted to ride on the platform of electric cars, it is the duty of the company to take into account that they are thereby subjected to greater risks and to observe a high degree of care in the running of the cars at points where there is danger that the passengers may be thrown off.

3.   When a passenger voluntarily chooses to ride on the platform of a car, he is to be held to the exercise of a high degree of care to avoid the dangers and perils of his position, that are known to him or which are reasonably to be apprehended.

4.   Whether a person was negligent in a given case is a question for the jury when the facts are in dispute or are to be determined from conflicting testimony.

5.   When a person is required to act in an emergency and under circumstances of suddenly impending personal peril, the law will not declare that reasonable care demands that he must choose any particular one of the alternatives presented and hold him guilty of contributory negligence as a a matter of law for not doing so.

On exceptions by plaintiff. Exceptions sustained. Case remanded for the assessment of damages only, as per stipulation.

This is an action on the case to recover damages for the immediate death of the plaintiff's intestate, Thomas Blair, who was a passenger on one of the defendants' electric cars and alleged to

have been caused by the negligence of the defendant. Plea, the general issue. At the conclusion of the evidence for the plaintiff, the presiding Justice ordered a nonsuit with the stipulation that if the nonsuit is overruled by the Law Court, the case to be remanded for the assessment of damages only.

The case is stated in the opinion.

*B. F. Maher,* for plaintiff.

*G. W. Heselton, and Philbrook & Andrews,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, CORNISH, KING, BIRD, JJ.

KING, J.   Action to recover damages for the immediate death of the plaintiff's intestate, Thomas Blair, alleged to have been caused by the defendant's negligence. A nonsuit was ordered with a stipulation that if it is not sustainable the cause is to be remanded for the assessment of damages only.

Blair was a passenger on defendant's car which left Augusta for Gardiner and Lewiston at 5 P. M., November 25, 1909. He boarded the car at Bradstreet's platform, a point between Hallowell and Gardiner, and at Grant's crossing, 2239 feet from Bradstreet's platform, as the car made a sharp curve or cross-over at a high rate of speed, he was thrown from the rear platform against a pole by the side of the track and instantly killed.

The evidence is plenary that the car was being driven at an unreasonable and negligent rate of speed at the time of the accident. The defendant does not question that, but contends that the nonsuit is sustainable on the ground of want of due care on the part of Blair.

The car may be thus briefly described: In the front is the vestibule room, occupied by the motorman, with a partition separating it from the smoking compartment in which there are double seats on the sides at right angles with the sides of the car, and an aisle between, with a partition separating the smoking room from the main room. The seats in the main room are arranged substantially as in the smoking room. Unlike most cars the main room stops with a partition about six feet from the extreme rear of the car, leaving an open platform with canopy overhead running as far as the end of the car. Upon each side of this observation platform is

a seat, designed for two passengers, running lengthwise of the car from the main room partition part way to the end of the car, and leaving an open space or gateway on each side for the use of passengers in getting on and off the car. Two steps are constructed at each opening, the upper one being set into the platform its apparent width. On each side of the car at the inside rear corner of the upper step is an iron gate post, and on the outside rear corner of the same step is an iron rod extending from the platform to the canopy which it supports, and the distance from the iron canopy rod to the gate post is about 9 inches, that being substantially the width of the upper step as let into the platform. The width of the platform between the upper steps is 6 feet and 3 inches. The extreme rear end of the car is an iron railing or fence, curved in line with the rear lines of the car, supported by rods and standards, and extending from the canopy post at the outside rear corner of the upper step on one side around to the corresponding post on the other side. At each opening there is a folding gate hung to the gate post, and so constructed that it can be completely shut up upon itself by being pushed back towards the curved railing. At the time of the accident the gateways were both open, the gates being folded back.

Situated at the extreme rear of the platform, and a little to the right of the center as you face the front of the car, is the controller mechanism, being, apparently, a steel cylinder about 15 inches in diameter and extending from the platform to the top of the railing; and on the very back of the car, a little below the top of the railing, and to the right of the center of the controller, is a device called the retriever, from which the trolley rope runs to the trolley arm, and which is designed to keep that rope taut.

The car was behind time and went by Bradstreet's platform some distance before stopping for Blair, it then backed towards him, while he in turn ran forward and boarded it on the right hand side of the rear platform. There were no vacant seats in the main room of the car or on the rear platform, but it appears that there was one or two vacant seats in the smoking apartment forward. As Blair boarded the car it started quickly and rapidly, and he stepped back against the rear railing of the car, on the right hand side of the controller, grasping with his right hand the upright canopy rod and taking hold of the railing with his left hand near

the controller. The space where he stood was small, but large enough for him to stand therein, the distance from the canopy pole in a straight line to the edge of the controller on the back side being 1 foot and 9 inches, and the distance from the gate post to the nearest point on the controller being about a foot.

There were two conductors on the car, both on the rear platform, but Blair was not notified that there was a vacant seat in the smoking apartment, nor told to take any other position on the car. There is a drop of 63.2 feet in the distance of 2230 feet from the place where Blair boarded the car to the curve at Grant's Crossing where the accident occurred.

The evidence discloses, that the car came down the grade to the curve at a very rapid rate of speed, slatting the passengers back and forth so much that they kept their seats with difficulty; that just as the car approached the sharp curve or cross-over the trolley arm was thrown off "with a bang;" that one conductor, Keene, grabbed the trolley rope, which was connected with the retriever, in an effort to control the trolley arm, and the other conductor, La Pointe, standing near the center of the platform, grasped and pulled the bell rope to stop the car; that simultaneously with these almost instantaneous happenings Blair moved quickly from his position beside the controller and stepped forward up behind La Pointe taking hold of his arms or shoulders in an effort to steady himself; and that as the car crossed the road and slued into the straight track with a violent lurch he was thrown clear of the car and against the pole with the fatal result mentioned.

The speed of the car as it made the curve or cross-over will be more readily appreciated, perhaps, from the fact that the Goodrich house is 248 feet beyond the pole where the accident occurred, and Mr. Goodrich testified that when he heard the trolley come off he went into the front part of his house and then outside of the house and saw the car go by without any light, except the tail light behind, and that the car went by the house and down over the hill out of sight. Presently he saw the car come back by his house to the crossing and pick up the body of Blair.

Blair was not negligent per se in riding upon the platform of the car. "Riding upon the platforms of such cars is too much encouraged by transportation companies and too much indulged in by the public, for the court to say, as a matter of law, that the mere riding

upon the platform of such a car is conclusive evidence of negligence, or is negligence per se, or is negligence in law." *Watson* v. *Railway Co.,* 91 Maine, 584.

Neither was it claimed that Blair was negligent in fact in taking the position he did on the platform. And if that question had been involved, it is clearly one that should have been submitted to the jury.

But the defendant contends that Blair's act in leaving the position he had taken, back against the rear railing of the car and beside the controller, and stepping out upon the open platform between the gateways, "in view of all the perils of that particular moment," was so manifestly a negligent act contributing to the accident that the nonsuit was properly ordered. We do not think that contention is maintainable.

When passengers are permitted to ride on the platforms of electric cars it is the duty of the company to take into account that they are thereby subjected to greater risks, and to observe a high degree of care in the running of the cars at points where there is danger that such passengers may be thrown off. And likewise when a passenger voluntarily chooses to ride on the platform of a car he is to be held to the exercise of a high degree of care to avoid the dangers and perils of his position that are known to him or which are reasonably to be apprehended. Failing to exercise such a degree of care is negligence. But whether a person was negligent in a given case, in other words, whether he failed to exercise such care as reasonable and prudent men would have exercised under like circumstances, is generally, and almost invariably, a question for the jury; and it is always so, when the facts are in dispute, or are to be determined from conflicting testimony, and also when the facts are not in dispute, if intelligent and fair-minded men may reasonably differ as to the conclusions and inference to be drawn from such facts.

While the facts as to what Blair did, and the existing circumstances and conditions under which he acted, are, in a sense, not really disputed, nevertheless it cannot be said that they are disclosed with unmistakable accuracy, for they are to be discovered in the somewhat varying statements, naturally so, of the eye-witnesses as to the various and sudden happenings involved in the sad accident. Therefore we think that it cannot be properly held in this case that

the facts and circumstances from which the question of Blair's negligence is to be determined are undisputed and certain. What he did, when and how he did it, and the circumstances and conditions under which he acted were matters for the jury to determine from all the evidence.

But assuming that there is no dispute or uncertainty as to what Blair did, or as to the existing circumstances, conditions, and influences under which he acted, it cannot be said that the only reasonable conclusion to be drawn therefrom is that he acted negligently. He was in a position of apparent personal danger. The banging of the trolley arm above him, the noise of the retriever behind him, the controller beside him, the flashings of electricity as the trolley wheel struck the wire, and the onward rushing of the car into the curve, all these are facts and circumstances to be considered in deciding the question whether he was negligent, acting in those circumstances, in suddenly stepping forward as he did away from the retriever and controller. Might not men of equal intelligence and impartiality honestly differ in their conclusions upon the question whether Blair acted under those circumstances and in that emergency with reasonable care? We think so. Moreover, when a person is required to act in an emergency and under circumstances of suddenly impending personal peril, the law will not declare that reasonable care demands that he must choose any particular one of the alternatives presented, and hold him guilty of contributory negligence as a matter of law for not doing so. In such cases the law invokes the judgment of a jury upon the question of contributory negligence. *Larrabee* v. *Sewall,* 66 Maine, 376, 381. *Shannon* v. *B. & A. R. R. Co.,* 78 Maine, 52, 61.

It is also suggested that there was some evidence introduced tending to show that Blair may have been somewhat under the influence of liquor at the time of the accident. But, if that was so, then it was a question for the jury to determine to what extent, if at all, that may have contributed to the accident.

It is therefore the opinion of the court that the question of the contributory negligence of the plaintiff's intestate should have been submitted to the jury with proper instructions.

> *Exceptions sustained. Case remanded for the assessment of damages only, as per stipulation.*