No. 30,308.

Jessie B. Parker, *Appellee*, v. Ida M. Kirkwood, *Appellant*.

(8 P. 2d 340.)

Opinion filed March 5, 1932.

*C. O. Pingry, Carl Pingry, P. E. Nulton* and *G. L. Stevenson,* all of Pittsburg, for the appellant.

*C. S. Denison* and *T. W. Clark,* both of Pittsburg, for the appellee.

The opinion of the court was delivered by

Sloan, J.: This action is one to recover for the death of a person through the negligence of another. The plaintiff prevailed, and the defendant appeals.

For some time prior to January 7, 1930, the appellant owned the building and operated the Wick hotel therein, at Pittsburg, Kan. The building was located on the southwest corner of the intersection of Broadway and Seventh street. The main entrance to the hotel was from Broadway into a small lobby in which the office of the clerk was located, and the entrance to the passenger elevator was immediately to the west of the lobby. There was also an entrance to the building from Seventh street. From this entrance there was a stairway, and a part of the space was used as an office for the Red Top Taxi Company. The building was three stories high. The first

floor, except as described, was occupied by mercantile establishments. The second and third floors were used as guest rooms. There was a freight elevator and stairway leading from a court in the south wing to the third floor through rooms numbered 237 and 337. The building was constructed in a U shape with the bottom of the U on Broadway and two wings for the sides of the U extending west from Broadway with a court between the two wings. In the north wing there were two rows of rooms on each floor with a hall between, and on each of the floors of the south wing there was one row of rooms with a hallway between the rooms and the south wall of the building. There was a fire escape at the west end of each of the halls, and the rooms were properly equipped with ropes. The hotel was equipped with a full system of telephones and with fire gongs on each floor, which were operated from the lobby.

For some time prior to January 7, 1930, Clarence F. Parker and the appellee, who were husband and wife, occupied rooms 337 and 338, located on the third floor in the south wing of the building. These rooms were immediately west of the freight elevator shaft, and west of room 338 was room 339, which was the west room in the building. The Parkers used room 338 as a living room, and the door to this room was used as an entrance to their suite. The telephone in room 337 had been plugged out, and the Parkers used the telephone in room 338. It was about fifteen feet from the door of room 338 to the fire escape at the west end of the hall.

On the night of January 6, 1930, Parker occupied the suite alone. He had company until 11 o'clock and retired about 11:30. A fire, the origin of which was unknown, started in or near a trash box on the ground in the open court, near the freight elevator shaft, and was the cause of the death of Parker by suffocation. There is a diversity of opinion as to when the fire was first observed. Some of the witnesses fix it as early as 12:15, and others as late as 12:45. The fire department records show that it was notified of the fire at 12:45. The night clerk testified that he was first notified of the fire about 12:30 or 12:45; that he notified the fire department immediately; that he then took the elevator to the second floor and went through the hall to the stairway leading down to the north entrance in which the office of the Red Top Taxi Company was located. He then went around the building to locate the fire and found that it had reached the second floor. When he returned to the lobby he attempted to turn on the fire alarm, but it did not work and he

began operating the switchboard in the office, plugged in and rang the telephones in rooms numbered 339 to 331, inclusive, except room 337, in which the telephone was disconnected, and told the occupants to get out of the rooms as soon as possible. He did not wait for individual responses to the call, and did not know whether he had a response from room 338, but a light appeared on the switchboard from this room, indicating that the receiver was down.

There was evidence to the effect that the fire gong was in operation, and that the telephones did not ring in the rooms on the third floor; that the manager, before the fire was under control, instructed the clerk to stop ringing the telephones, that the fire was out; that the night clerk assisted in removing cars in the court away from the fire before returning to the switchboard, and that he had not been instructed how to operate the fire gong. There was evidence establishing that Clarence F. Parker, at the time of his death, was forty-eight years old, and had been an able-bodied man, earning a salary of $350 per month, and that the appellee was his widow. On this evidence the jury returned a general verdict in favor of the appellee, and answered special questions as follows:

"1. At what time was the fire in the hotel discovered and the night clerk, A. G. Calvert, notified? A. 12:35 o'clock.

"2. After the fire in the hotel building was discovered by A. G. Calvert, the night clerk, did he ring the telephones in the rooms on the south side of the third floor of the hotel building? A. Yes.

"3. If you answer question No. 2 'yes,' or in the affirmative, then state how soon after being notified of the fire and ascertaining the location of the same it was that A. G. Calvert, the night clerk, rang the telephones in the rooms on the south side of the third floor of the hotel building. A. Fifteen minutes.

"4. After the fire in the hotel building was discovered, what warning of fire was given, or attempted to be given, by A. G. Calvert, night clerk, to Clarence F. Parker? A. By phone in adjoining room.

"5. After the fire started, was Clarence F. Parker awakened? A. He awoke.

"6. If you answer question No. 5 'yes,' or in the affirmative, then state what there was to prevent Clarence F. Parker, had he exercised ordinary care, from getting out of his rooms down the rope or by way of the fire escape west of his rooms. A. Too late account of smoke and heat.

"7. What, if anything, in the exercise of ordinary care, could defendant, her agents or servants, have done after the fire was discovered to have saved the life of Clarence F. Parker? A. Immediately sound fire alarm or gong system.

"8. If you find for plaintiff, what act or acts of negligence do you find caused the death of Clarence F. Parker? A. Failure to phone in time and complete failure to sound fire alarm or gong system.

"9. How soon after the night clerk, A. G. Calvert, was notified of the fire was it that he notified central telephone operator of the fire? A. Ten minutes."

The appellant contends that the evidence is insufficient to establish a cause of action, and that findings numbered three and nine are not supported by any evidence.

The law involved in this case is not intricate but requires the application of the well-recognized rules relating to the law of negligence. The hotel keeper is not an insurer, but it is his duty to exercise reasonable and ordinary care for the safety, convenience and comfort of his guests. In case of danger from fire, or otherwise, it is his duty to give a guest such warning as a reasonable, prudent person would give under like or similar circumstances, taking into consideration the extent of the fire, the size of the building, and the equipment of the hotel installed for the safety and protection of his guests. (37 A. L. R. 158, and cases there cited.)

Negligence, if it exists, must be found in the conduct of the night clerk and the management of the hotel. It is not surprising that the witnesses, under the circumstances of this case, would differ in their estimate of time. When the night clerk was first notified of the existence of the fire is not definitely shown. This knowledge, however, was conveyed to him some time between 12 o'clock, midnight, and 12:45. The fire department records show that it was notified of the fire at 12:45, and this time is not disputed. The fire department, according to the testimony, was at the scene of the fire within two minutes after notice was given. The clerk's testimony is to the effect that he notified the fire department immediately, while the appellee contends that he did not notify the fire department until after he returned from the place of the fire. If the time estimated by the fire department is correct, taking into consideration the distance the clerk had to travel and the evidence that he assisted in the removal of cars parked in the court and called a guest in room 333 before the fire department arrived, he could not have notified the fire department until after he returned from the place of the fire. In any event, this presented a question of fact for the jury, and we think the evidence fully warranted the jury in finding that the clerk did not notify the fire department until ten minutes after he had notice of the fire. It was the privilege of the jury to accept as true the testimony to the effect that the clerk had not been instructed how to operate the fire gong, and that he did not know whether he

had any response from Parker's room. This evidence, when considered in connection with all the other facts and circumstances in the case, fully warranted the jury in finding that no attempt was made to notify the guests of the fire until fifteen minutes after the clerk knew of its existence. When taking into consideration all of the evidence in the case we think it fairly presented a question for the jury to determine whether the deceased was warned of the existence of the fire in time to have permitted his escape. The findings of the jury are supported by substantial evidence.

It is next contended by the appellant that instruction number fifteen given by the court to the jury is erroneous, in that the court, in defining the duties and responsibilities of the hotel keeper to his guests, did not include in this instruction any reference to the defense of contributory negligence. The court, in instruction number twenty-three, fully defined the law of contributory negligence, and there is nothing in instruction number fifteen that destroys the force of instruction number twenty-three. The court, of course, cannot include all of the law in one instruction, and the instructions must be read together. (*Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 Pac. 599.) There is no merit in this contention.

The appellant complains of instructions numbered sixteen, seventeen and eighteen. The court, in substance, told the jury in these instructions that if the building was so constructed that the exercise of reasonable care on the part of the keeper towards his guests required the installment and maintenance of telephones and fire gongs, the failure on the part of the keeper to keep such equipment in operation would constitute negligence. Under the circumstances of this case, and especially in view of the findings of the jury, these instructions were not erroneous.

The appellant contends that instruction number twenty-one is erroneous. The instruction is as follows:

"You are instructed that where a person is found dead or killed through, by and on account of the negligence of another the law presumes, if there was no eyewitness to the casualty, that such person so found dead or killed had exercised due care for his own protection."

This instruction is not in accordance with the rule laid down by this court in the case of *Jones v. Railway Co.*, 91 Kan. 282, 137 Pac. 796. The instruction should not have been given without the preliminary qualifications that the presumption can only be indulged

in in the absence of evidence on the question; that such presumption must be considered in connection with the facts and circumstances of the case, and may be overcome by evidence. The instruction as given, in effect, makes the presumption conclusive in the absence of an eyewitness, and this is not the law. In instruction number twenty-three the court, after defining contributory negligence, told the jury that in determining this question it should take into consideration all of the evidence introduced in the case, and if it found from all the evidence introduced that the deceased was guilty of negligence which contributed to or helped to cause the injury complained of, then, and under such circumstances, the appellee could not recover. When instructions numbered twenty-one and twenty-three are read together we are convinced that the language used in instruction number twenty-three was broad enough to cure the defect in instruction number twenty-one and that the jury could not have been misled. Taking into consideration all of the instructions given by the court, and the evidence in the case, we conclude that the giving of the instructions was not prejudicial to the rights of the appellant, and therefore not reversible error.

Complaint is made that the court unduly emphasized the appellee's evidence in the instructions, and that the instructions are not clear as to what testimony was withdrawn from the consideration of the jury. We have examined the instructions and find that there is no merit in this contention.

The judgment of the district court is affirmed.