## HERCULES POWDER CO. v. CRAWFORD.

### No. 13559.

Circuit Court of Appeals, Eighth Circuit.

Oct. 30, 1947.

Arthur R. Wolfe, of Kansas City, Mo. (James R. Sullivan, of Kansas City, Mo., on the brief), for appellant.

Stanley Garrity, of Kansas City, Mo. (William A. Franken, of Carrollton, Mo., and Scott R. Timmons, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought to recover damages for wrongful death under the statutes of Kansas, Sec. 60-3203, G.S.Kan. 1935, as amended by Laws of Kansas 1939, c. 233, § 2, pp. 467, 468; Sec. 60-3204, G.S. Kan.1935. The parties will be referred to as designated in the trial court.

Plaintiff, suing for the benefit of herself and her minor children, is the widow of Harry E. Crawford, who at the time of his death was an employee of the defendant at the Sunflower Ordnance Works, in Johnson County, Kansas. Harry E. Crawford was burned to death February 22, 1945, while asleep in a room in a barracks or dormitory building used as sleeping quarters for defendant's employees. This structure was one of several operated, maintained and controlled by defendant in connection with the Sunflower Ordnance Works for the use of its employees to whom it rented rooms. As ultimately submitted to the jury, the question was whether the negligence of Bernard Hawkins, defendant's janitor in charge of the barracks, in failing to warn Crawford of the fire after it had been discovered, was the cause of his death. At the close of all the testimony defendant moved for a directed verdict which was denied and the jury returned a verdict in favor of the plaintiff in the sum of $10,000.00, and from the judgment entered on this verdict defendant prosecutes this appeal. In seeking reversal it contends that (1) there is no substantial evidence of negligence; (2) the court

erred in failing to instruct the jury as to the applicability of the emergency rule.

Crawford occupied a room in barracks designated in the record as barracks 26. This was a two story building constructed of frame and composition materials, wood floors and partition walls of fiber board, 104 feet in length north and south, by 29½ feet in width, with hallways running the full length of the building on both the first and second floors. On the ground floor there was a door used as the main entrance, which was located in the center of the east side of the building, and which led to the first floor hallway. There was an inside stairway leading to the second floor, located just to the right or north of the east entrance. There was an outside door at each end of the first floor hallway and likewise an outside door at each end of the second floor hallway with outside stairways leading to the ground. Each of these doors at the ends of the hallways had a safety device on the inside known as a "panic lock." The door could be opened from the inside, whether locked or not, by pressing upon a bar on the inside of the door but could not normally be opened from the outside. There were 33 sleeping rooms, 16 on the first floor and 17 on the second floor. There was a laundry room on the west side of the first floor about the center of the building and a telephone on the east wall of the first floor hallway, just south of the east entrance.

During the work shift from 8:00 a. m. to 4:00 p. m., there was one janitor in each barracks and at the time of the fire in question Bernard Hawkins was on duty as janitor in barracks 26 and Alonzo Dunn was on duty in barracks 27. The barracks supervisor or housekeeper, over the janitors was Mrs. Irene Spence. It was the duty of the janitor to clean up the rooms, make up beds, change linen, and call occupants of rooms when requests for calls were left with the janitor, and in general to perform the duties of a janitor. He was instructed not to leave the barracks while on duty, except in an emergency, and to carry out every precaution in case of any condition coming up, to safeguard the lives of the occupants.

■ Crawford paid defendant $3.50 per week for the room which he was occupying and which had been assigned to him. While the technical relation of innkeeper and guest may not have existed between defendant and deceased because defendant was not operating an inn or a hotel, in that it did not maintain this dormitory or lodging house as a public place where all transient persons might be received and entertained as guests, but rather for the accommodation of certain of its employees under express contract, at a specified rate, yet so far as the claim of negligence here urged is concerned, the applicable rule would seem to be the same. It was, as the court instructed and as the parties agree, the duty of the defendant to exercise reasonable care for the occupants of this dormitory or lodging house so as seasonably to warn the guests on the discovery of a fire and to call the fire department. Here the duty to warn arose when the janitor learned of the outbreak of the fire. Parker v. Kirkwood, 134 Kan. 749, 8 P.2d 340; Smith v. The Texan, Inc., Tex. Civ.App., 180 S.W.2d 1010; West v. Spratling, 204 Ala. 478, 86 So. 32. The question is therefore a very narrow one; to-wit, whether there was substantial competent evidence that the janitor under the circumstances, after the discovery of the fire, exercised ordinary care in warning Crawford.

■■ The jury having found the issues in favor of the plaintiff, we must take that view of the evidence most favorable to the plaintiff, and plaintiff is also entitled to the benefit of such reasonable and justifiable inferences as may reasonably be drawn from the evidence. Chicago, St. P., M. & O. Ry. Co. v. Muldowney, 8 Cir., 130 F.2d 971; Chicago, St. P. M. & O. Ry. Co. v. Kulp, 8 Cir., 102 F.2d 352, 133 A.L.R. 1445; McGivern v. Northern Pac. Ry. Co., 8 Cir., 132 F.2d 213; Champlin Refining Co. v. Walker, 8 Cir., 113 F.2d 844; Hossack v. Metzger, 8 Cir., 156 F.2d 501. If when so viewed, the evidence is such that reasonable men might differ as to the existence of facts established or as to the reasonable inferences that may be drawn from conceded facts, the case is one for the determination of a jury. So viewing

the evidence, the jury in the instant case might reasonably have found that on February 22, 1945, Crawford had worked from midnight to 8:00 a. m. He returned to barracks 26 about 2:30 p. m., and with the knowledge of the janitor, Hawkins, went to his room to sleep. Hawkins had a pass key to all sleeping rooms in the barracks. About half an hour later Hawkins called one Loren Gay, who occupied a room in the extreme northwest corner of the ground floor of the building approximately 50 feet from the center of the building. Crawford's room was on the second floor at the opposite end of the building near the southeast corner. The outside door on the south end was about 12 feet from Crawford's room. Gay, after being called, lit a cigarette, threw a match into the wastepaper basket and went down the hall to the telephone, while Hawkins returned to the laundry room. After two or three minutes he smelled smoke and observed flames and smoke coming out of Gay's room. Hawkins went to Gay's room and observed smoke and flames and then went to the telephone. He told Gay his room was on fire and asked him to get off the telephone so he could call the fire department. He attempted to call the fire department but was unable to reach it. Mrs. Spence, the supervisor, then came to the door and asked what was the matter and Hawkins told her the barracks was on fire and that he had been unable to get the fire department. Mrs. Spence said she would call the fire department from barracks 27 and for him to get everybody up. She ran to barracks 27 and called the fire department and summoned janitor Alonzo Dunn, telling him that barracks 26 was on fire, following which Mrs. Spence and Dunn rushed over to barracks 26 and Mrs. Spence again said to Hawkins, "Have you got everybody out of your building," to which Hawkins replied, "Yes, yes I have." Efforts were made to extinguish the fire by applying water which janitor Dunn and another man carried. An attempt was also made to go up the outside stairs at the south end to open the door on the second floor but this could not be done from the outside. At that time Dunn heard a call for help on the second floor and he and another

man got a ladder and put it up to the window of the room from which the call for help came. Dunn broke in the lower sash of the window but the smoke and blaze came up over his head and he was forced to come down the ladder. About the time Dunn and his associate ceased carrying water, and just before he heard someone calling for help, he heard Mrs. Spence say to Hawkins, "I thought you got everybody out of the barracks," and Hawkins said to her, "Well, I had forgot about that fellow was up there because I talked to him as he was going in."

■ Hawkins learned of the fire immediately after it started and while it was still confined to Gay's room and, in fact, to the waste basket in that room. This was 50 feet north of the center of the building where the stairs going to the second floor were located, and Crawford's room was 40 or 50 feet south of the center of the building, where the head of the stairs was located. When Gay went out of the building the fire was still confined to the extreme north end of the building. There was evidence that this was five minutes after the fire started, and there was evidence that at that time Hawkins went outside and "just stood around." From the testimony the jury could have believed that as much as eight minutes after the fire was discovered it was still confined to the north end of the building and that there was no smoke or flames at the center entrance where the stairs were located, and that Hawkins could have gone to Crawford's room and warned him had he acted promptly. He knew that the outside door at the south end of the hall on the second floor could readily be opened outward, permitting him to go down the outside stair from that end, apparently far removed from any fire, and Crawford might thus have been rescued. There was some evidence that the fire did not spread to the south end of the building until just before the fire department arrived, as much as twenty minutes after the fire started. The jury may well have believed that Hawkins forgot that Crawford was in his room and that his recollection was first refreshed when Crawford called for help. The ad-

mitted facts and the surrounding circumstances we think required a submission of the case to the jury on the question of negligence. Parker v. Kirkwood, supra. To be sure, there was evidence which would have justified an inference that after Hawkins had tried to make a telephone call, the fire had spread so far that it would have been dangerous for him to remain in the building and that he could not, with safety to himself, have attempted to reach Crawford so as to arouse him and that he could not have warned him effectively from the outside. But certainly the testimony did not require such an inference and this seems to be conceded by counsel for defendant for they say in their brief: "Admittedly, as heretofore stated under Point I, Hawkins would have had time to have gone to Mr. Crawford's room and awakened him immediately after the fire was discovered and while the fire was confined to Gay's room and the north end of the barracks."

 But defendant contends that notwithstanding the fact that the jury, under the evidence, might properly have found that Hawkins could, after the discovery of the fire, have without serious danger to himself, gone up the stairway and awakened Crawford, yet it should not be held responsible for Hawkins' failure so to do because the fire itself created an emergency situation. Reasonable care is to be judged by the surrounding circumstances and one who is confronted with a sudden and unexpected emergency may not be chargeable with negligence even though he omits to act in a judicious or prudent manner. But the existence of such an emergency and the absence of an opportunity for deliberation or judgment are, of course, prerequisites to the defense against liability for negligence claimed to be based upon exceptional circumstances of sudden peril. Neither may one be excused from all errors of judgment by the fact that he is compelled to act immediately upon sudden emergency, but he is required to use due care under the circumstances. The rule is, after all, an application of the prudent man rule. It simply means that one who, through no fault of his own, is confronted with a sudden peril and does things which seem afterward to have been improper, is not negligent if he does what a prudent man would or might do under the circumstances. We do not think the emergency rule can be invoked to the extent contended for. Hawkins in fact had some time for deliberation and he was not required to act from instinct or for self preservation. The proof rather conclusively shows that there was at least a space of eight minutes after discovery of the fire during which Crawford might safely have been rescued by Hawkins. It also shows not only that Hawkins was not required to act instinctively but that Mrs. Spence specifically asked him whether he had gotten everybody out of the building. This was at a time when he might still have acted and certainly shows that he had time for deliberation. It can not therefore be said that the danger was so imminent that it left no time for deliberation. For eight minutes after its discovery the fire was confined to the north end of the building, yet Hawkins during that time did not attempt to warn Crawford, and the jury may well have believed that his failure so to do was due to the fact that he forgot that Crawford was in the building. The fire was such a menace as to demand prompt action on the part of those in charge of the shelter of human beings but Hawkins was not required to act instinctively. It is said that the "quality of instinctive action inheres in the emergency doctrine." Kardasinski v. Koford, 88 N.H. 444, 190 A. 702, 703, 111 A.L.R. 1017.

It follows that the court committed no error in denying defendant's motion for a directed verdict, nor in refusing the instruction based upon the applicability of the emergency doctrine, requested by defendant. The judgment appealed from is therefore affirmed.