**Brent P. HIXON and Brenda J. Hixon**

v.

**Robert L. MATHIEU.**

Supreme Judicial Court of Maine.

Aug. 31, 1977.

---

5. 2B Baron and Holtzoff, Federal Practice and Procedure, § 891 (Rules Ed. 1961).

Hart, Stinson & Lupton, P. A. by Ronald W. Lupton, Carl W. Stinson, Ronald A. Hart, Bath, for plaintiffs.

Richardson, Hildreth, Tyler & Troubh by S. Peter Mills III, Portland, for defendant.

Before DuFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

ARCHIBALD, Justice.

Brenda J. Hixon instituted this civil action to recover damages for her personal injuries resulting from an automobile accident. She was joined as plaintiff by her husband who demanded damages for loss of consortium, for medical expenses incurred on behalf of his wife, and for property damage. The jury returned a verdict in favor of the defendant, from which both plaintiffs have appealed after their motions for judgment n. o. v. (Rule 50(b), M.R.C.P.) and for a new trial (Rule 59(a), M.R.C.P.) were denied.

We sustain the appeal and order a new trial.

The defendant, accompanied by his fianceé, her brother and sister, was operating an automobile owned by his parents. While in the business section of Brunswick this vehicle collided with one being driven by Brenda J. Hixon, which was then stationary.[1]

The jury, without objection, was given an instruction comparable to that which is frequently given when an actor is faced with a sudden, unexpected emergency.[2] This opin-

1. Mrs. Hixon's conduct was not in issue since under no view of the facts could she be deemed in any way negligent. As the Justice presiding explained it to the jury:

"I think it is pretty much . . . conceded that the plaintiff was sitting in the car where, for all intents and purposes, she had the right to be, and was a passive factor in what happened."

2. "[I]f something unforeseen and not reasonably foreseeable by the prudent man as I have defined him, takes sudden control of a situation, or some sudden event creates an emergen-

cy without the knowledge or control, or the pre-knowledge or control of the individual, then, you have to consider the reaction of that person to the emergency in the light of the reasonably prudent man's reaction, and consider it in the light also of his time to decide, his opportunity to make a rational judgment. Again, it must not be an emergency of his act of making, or one which he brings about by antecedent negligence or misbehavior. . . .

"One confronted with a sudden, unexpected emergency not of his own making isn't necessarily held at his peril of making the wisest or right decision. He may make a mistake among

ion is confined to a determination of whether giving this instruction was "inconsistent with substantial justice." Rule 61, M.R.C.P.

The facts become critical.

The defendant, age nineteen, and without extensive driving experience, was proceeding on Route 196 in Topsham. This road leads easterly from Lewiston to Topsham and intersects with Route 201, the north-south highway between Brunswick and Augusta.

The defendant accelerated his vehicle when approximately three-tenths of a mile from this intersection. When he removed pressure from the accelerator pedal, he noticed that it "was not decreasing in speed." He estimated his speed then to be 60 miles per hour. The defendant next negotiated the intersection with Route 201 and continued toward Brunswick. He drove through Topsham village, crossed the bridge over the Androscoggin River, and entered Main Street in Brunswick via the overpass above the Bath-Brunswick Road, before the collision occurred. It was approximately 1.4 miles from the point of impact with the Hixon car to the intersection of Routes 196 and 201. The total distance covered, therefore, between the time the accelerator apparently "stuck" and the collision was 1.7 miles, and required approximately two minutes.

In driving through Topsham the defendant avoided collision with several vehicles, save one, by straddling the center of the highway. After crossing the Androscoggin River Bridge, his vehicle collided with two more automobiles before "rear-ending" the Hixon car.

There was no evidence indicating any prior functional problem with the defendant's automobile. An examination after the accident indicated a malfunction in the carburetor that manipulation of the foot pedal could not alleviate.

Critical to the result here reached are the defendant's physical and mental reactions during his two minute traverse of the 1.7 miles. The trial transcript contains numerous examples of both.[3]

The legal problem precipitated by these facts is whether it was "inconsistent with substantial justice" to have given the jury the instruction.

We have examined cases in Maine dealing with this instruction and are unable to find any in which it has been given when the interval between the creation of the so-called emergency and the ensuing conduct has been as extensive as here, either in terms of time or distance.

*See, e. g., Packard v. Whitten,* 274 A.2d 169 (Me.1971) (an illegally entering vehicle only 4' to 8' distant when first observed); *Hoch v. Doughty,* 224 A.2d 54, 56 (Me.1966)

---

his options to decide, and he may make a wrong choice, and had he chosen something else, no damaging event might have occurred. He's not necessarily to be penalized for making the wrong choice, if no instrumentality or negligence, as we have administered it, the violation of the prudent man rule, takes place, the reasonably prudent man under all of the circumstances."

**3.** (1) "I took my foot and tried to get underneath the plastic part of the accelerator."

(2) "I had one hand on the steering wheel . . . and tried to reach down and pull the accelerator back."

(3) "I told my fianceé to get down there and try it."

(4) Defendant elected to pass two cars "on the right" at the intersection with Route 201.

(5) Having entered Route 201, defendant got into the traffic lane but deliberately "moved over to the center of the road" because he was going faster than normal traffic.

(6) "I took my foot off the accelerator" and "I stepped on the brake."

(7) "I then immediately started blowing my horn."

(8) Although defendant considered switching off his ignition, he refrained "for the fear of . . . I needed my steering power."

(9) After hitting the car in Topsham, "I took my gear shift and down shifted."

(10) Defendant rejected the thought of attempting to put the car in reverse or park because, "I did not want to come to a sudden stop," which he felt would cause him to lose control of the car.

(11) As the vehicle approached the Androscoggin River Bridge, the defendant reasoned that he could take a right turn after crossing the bridge, which would lead "onto a four-lane highway" which would "give me more time to think of what I could do." This plan was not executed because the collisions intervened.

(doctrine likened to making "split second" decisions); *St. Johnsbury Trucking Co. v. Rollins*, 145 Me. 217, 74 A.2d 465 (1950) (driver had 150' to avoid a vehicle blocking the highway); *Smith v. Joe's Sanitary Market, Inc.*, 132 Me. 234, 235, 169 A. 900 (1933) (vehicles only "a car length or a car length and a half away"); *Coombs v. Mackley*, 127 Me. 335, 143 A. 261 (1928) (vehicles within less than 300' of each other); *Blair v. Lewiston, Augusta & Waterville St. Ry.*, 110 Me. 235, 85 A. 792 (1913) (only seconds involved).

■ If there is sufficient time, even though very brief, in which to take deliberate action after being confronted with a perilous situation, the conduct of an actor is not to be judged under the emergency rule. *Bonefant v. Chapdelaine*, 131 Me. 45, 50, 158 A. 857, 859 (1932) (the actor "had time to consider" the alternatives); *Gravel v. Roberge*, 125 Me. 399, 134 A. 375 (1926) (where driver unnecessarily "lost his head").

Other jurisdictions have reached similar results under comparable circumstances. The Wisconsin Court has succinctly stated the rule:

"The application of the emergency rule rests upon the psychological fact that the time which elapses between the creation of the danger and the impact is too short under the particular circumstances to allow an intelligent or deliberate choice of action in response to the realization of danger. Prosser, The Law of Torts, 3d ed., ch. 5, p. 171, sec. 33 . . . ."

*Cook v. Thomas*, 25 Wis.2d 467, 471, 131 N.W.2d 299, 302 (1964). *See also Hercules Powder Co. v. Crawford*, 163 F.2d 968 (8th Cir. 1947); *Uzich v. E. & G. Brooke Iron Co.*, 76 F.Supp. 788 (E.D.Pa.1947), *aff'd*, 167 F.2d 633 (3d Cir. 1948); *Bundy v. Ambulance Indianapolis Dispatch, Inc.*, 301 N.E.2d 791 (Ind.App.1973); *Moore v. Funk*, 155 Ind.App. 545, 293 N.E.2d 534 (1973); *Hedgecock v. Orlosky*, 220 Ind. 390, 44 N.E.2d 93 (1942); *Kneeshaw v. Detroit United Ry.*, 169 Mich. 697, 135 N.W. 903 (1912).

In summary, our analysis of decisions generally has disclosed no instance where the emergency doctrine was found to be applicable on facts comparable to those disclosed in this record. Using language found in Restatement, Second, Torts § 296, comment (b), an actor's conduct may be judged under the emergency doctrine delineated by § 296(1)[4] if the actor is found

"in a position where he must make a speedy decision, between alternative courses of action and that, therefore, he has no time to make an accurate forecast as to the effect of his choice."

The jury instructions, read in their totality, clarify beyond possibility of disagreement that in order to exonerate the appellee from negligence the jury was required to consider his conduct only in the context of the emergency instruction.

■ As we have carefully pointed out in our summary of the facts, the appellee had an opportunity to deliberate and to determine a course of conduct on not one, but on at least eleven occasions. He did not act by making "split second decisions." As we see the undisputed facts, the sudden emergency occurred on Route 196 and not on Main Street in Brunswick. The appellee was able to deliberate, forecast, and plan his future conduct. It appears clear to us, therefore, that the jury should have been permitted to appraise this course of conduct, not in the context of a spontaneous reaction resulting from a sudden emergency, but in the context of what a reasonably prudent person would have done given the opportunity to make these deliberate judgments. Posturing the case before the jury in the context of an emergency deprived the plaintiffs of their right to have the jury weigh and evaluate the facts under appropriate negligence instructions. Since they were deprived of this right, the error is one which is not consistent with substantial justice. Thus, the failure to object to the

---

4. "(1) In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency which requires rapid decision is a factor in determining the reasonable character of his choice of action."

instructions does not prohibit a reversal of the judgment based on the jury verdict.

For the reasons hereinbefore delineated we conclude that justice demands that the plaintiffs be granted a new trial.

The entry is:

Appeal sustained.

New trial granted.

All Justices Concurring.