[Civ. No. 7527. Second Appellate District, Division Two.—February 20, 1933.]

JEANE MERION, an Infant, etc., Respondent, v. FRED SCHNITZLEIN et al., Appellants.

Denio, Hart, Taubman & Simpson for Appellants.

Cameron & Perkins for Respondent.

ARCHBALD, J., *pro tem.*—On November 30, 1928, plaintiff was living with her mother in a furnished apartment located in an apartment house in Long Beach operated by defendants and rented from them. Installed in each apartment of the establishment, including that occupied by plaintiff and her mother, was a small Humphrey Radiant Fire Heater No. 20. On the date mentioned the mother lighted the heater in the morning, dressed, had breakfast and departed to her work, returning at noon for lunch. She knocked on the door of the apartment but received no answer. "I commenced hammering, pounding on the door. I heard her [the daughter] fool with the door, and she opened it and just fell back on the floor." The mother then telephoned Dr. Newman, who in turn, thinking the girl might have been overcome by monoxide gas, requested the pulmotor squad of the fire department to go at once to the apartment. This they did, finding the girl unconscious. After working on her for forty-eight minutes consciousness was restored. The lieutenant in charge testified that he had been a member of the squad for several years and had treated at least a hundred cases; that plaintiff's breath at the time had the smell distinctive of cases wherein people were overcome by monoxide gas. Dr. Newman testified that prior to November 30th he had known plaintiff for about two years and that she "was a normal, healthy girl of her age"; that he treated her at the apartment for a month after that date and that she then came to his office with her mother the latter part of December and in January, 1929; that later he advised the mother to "try a change of climate" for the girl; that he did not see her again until April, at which time she had not recovered her health; that in his opinion her condition was the result of monoxide gas poisoning.

This action was brought by plaintiff through her mother as guardian *ad litem*, the complaint charging negligence in installing the heater without venting it as required by city ordinance, and that the heater was negligently "adjusted and left by said defendants in such a condition that mon-

oxide gas was produced when said heater was burning". Trial before a jury resulted in a verdict of $5,000 against defendants. Motion for new trial was denied on condition that plaintiff accept $2,000 damages in lieu of the amount awarded by the verdict of the jury. Such election was filed by plaintiff and defendants appeal from the judgment entered. The sole question raised by the appeal is as to the sufficiency of the evidence to support the judgment.

In addition to the evidence already set out, plaintiff introduced an ordinance of the city of Long Beach, No. B–269, section 6 of which provides that "Every person, firm or corporation installing any . . . stationary house heater of any form or type shall effectively and fully vent the same to the outside of the building in which it is installed within thirty days after installation." Section 4 of the same ordinance reads: "The word 'install' shall mean to . . . adjust any appliance already connected." The evidence also shows that the heater in question was connected in 1923 and had been in use since installation.

■ It is urged by appellants that the heater was not "stationary" and was therefore not covered by the ordinance. This question was left to the jury by appropriate instructions. The evidence demonstrates that it was the only means of heating the living-room, hall, bathroom and bedroom of the apartment, with the exception of such heat as might come into the living-room from the kitchen. It was further shown that the heater was connected up with cast-iron pipes to the gas-pipes in the building; that it had stood in the same place since the building was constructed and that it had no vent. J. H. Grayson, a manufacturer of gas appliances of many years' experience, testified that a heater so connected, in his personal opinion, "would be stationary". Such witness also testified that a good vent would have eliminated the poisonous gas by carrying it "off into the open air". There is also evidence that the mother had complained to defendant Grover C. Sumner that every time they turned the heater on they "would get severe headaches", and "asked him to fix it or get it fixed", and that Mr. Sumner had "taken it all apart" and "fixed it".

We have stated enough to show that there is substantial evidence from which the jury might well conclude that the heater in question was "stationary", and also that because

it was not vented as required by ordinance monoxide gas was released in the room, causing the illness of which respondent complained. It is true there is very substantial evidence in direct conflict with that of Dr. Newman as to the condition of the girl being due to monoxide poisoning, and also as to the condition of the heater on the date mentioned. That, however, is a conflict which it was the province of the jury to settle in the first instance. The jury having done so, appellants appealed for relief to the trial judge, who heard the evidence, saw the witnesses and who refused to set the verdict aside when the judgment entered thereon was reduced. The evidence, presenting as it does such a sharp conflict on nearly every material point, "we cannot usurp the functions of the jury and the trial court, who finally passed upon the weight, effect and sufficiency of the evidence and the credibility of witnesses, and determine in place of these arbiters of fact the credibility of witnesses and resolve conflicts in proof" (*Bennett* v. *Chanslor & Lyon Co.*, 204 Cal. 101, 105 [166 Pac. 803, 804]).

Judgment affirmed.

Works, P. J., and Craig, J., concurred.