**SHARPE v. MUNOZ et al.**

No. 12518.

Court of Civil Appeals of Texas.
San Antonio.

March 11, 1953.

Rehearing Denied April 8, 1953.

Eskridge, Groce & Hebdon, San Antonio, for appellant.

Church & Church and Lieck & Lieck, San Antonio, for appellees.

POPE, Justice.

This is an appeal from a judgment in favor of the parents of a minor child who died as a result of a fire in the home. A jury verdict supported the parents' claims that a floor furnace, by reason of appellant's faulty installation, caused the fire. Appellant urges that the findings were supported by no evidence, insufficient evidence, and were against the overwhelming preponderance of the evidence. Appellant urges further, that the jury finding of damages in the amount of $15,000 damages to the parents for the loss of a twelve-month-old child, and the additional finding of damages in the amount of $7,500 for the injuries suffered by the child from the time of the fire up to the time of her death were excessive. Certain property damage items included in the judgment are not disputed. Appellant's final point is that the court erred in failing to credit the judgment with the sum of $1,000 paid to the parents by some third person in exchange for a covenant not to sue; but, in our opinion, the point is not sufficiently supported by the proof.

The findings by the jury with regard to liability are supported by the evidence. There were findings that the floor furnace was improperly installed, because the draft diverter was not securely attached to the furnace, that appellant placed the thermostatic control at a place where it would not regulate the temperature, that the floor furnace was not adequately connected to the structure of the house, and that the defendant installed the furnace in an opening that was too large to accommodate the furnace. Each of those four findings of negligence was found to be a proximate cause of the fire. Proof of the origin and the cause of the fire, as is the case in most fires, was dependent upon circumstantial evidence, and no eyewitnesses could testify. Mrs. Munoz, the mother, about one o'clock on the afternoon of the tragedy, left her home with some

friends to buy some groceries. She left a four-year-child asleep in one bedroom, and the twelve-month-old baby girl asleep in her crib in another bedroom. When she returned, about thirty minutes later, her home was destroyed and her infant child was dead. The baby was found out of her crib and in the middle of the bedroom floor. The other child had escaped through a window. The fire captain, district fire chief, fire marshal, arson investigator and the chief of the education department of the San Antonio Fire Department, located the origin of the fire at the floor furnace.

The evidence, both pictorial and testimonial, demonstrates that the furnace had an attachment beneath the floor known as a draft diverter. Written on the metal side of the diverter were words entitled "Important Notice." The instructions concerned its safe attachment to the furnace by screws. These instructions were patently ignored. It was indisputably demonstrated that only one screw was used to attach the diverter to the furnace, when the diverter should have been attached by a screw on each of the four sides. After the fire, the diverter was seen by several persons who testified that it was hanging by only one screw, that the diverter had fallen to one side and exposed an opening from the furnace. A photo taken before the furnace was removed from the destroyed house, showed the marks against the side of the furnace scraped by the diverter when it fell to one side. A witness stated that the metal on the side of the furnace evidenced intense heat, which he concluded was caused by hot gases that had escaped through the improper connection. The plaintiff, fire chief, fire inspector, photos, and even the defendant's testimony, evidenced an improper connection. Still other proof showed that an elbow connecting the diverter to the vent pipe was an improper makeshift, and that the weight of the vent pipe was not properly or sufficiently supported by straps to the floor joists. The expert testimony further showed that gas could escape from the faulty connection of the improperly attached draft diverter, that it would collect beneath the floor and gradually de-

hydrate and char the timbers and finally burst into flames.

The jury also found the appellant negligent because the thermostat was placed in a room that was separated from the furnace by a door. When the door was shut, the heat generated in the furnace would not reach the thermostat, with the result that the furnace would build up excessive heat instead of automatically cutting off, as purposed by the installation of the thermostat. Appellant's own expert testified to that fact.

The jury finding that the furnace was installed in a floor opening that was too large was a mere matter of measurement. Photos also showed that the inside timbers, those that should be next to the metal sides of the furnace, were burned and charred more than the opposite sides of the same timbers. That testimony evidenced the appellees' contention that the furnace had dropped through and burned the inside of the timbers that should have supported the furnace.

Both appellees and appellant made experimental tests, the appellees using the same furnace and appellant using a new furnace of the same model. Those experiments presented controversial results and all parties viewed them as favorable to their contentions. The jury could reach its own conclusions from the experiments. By reason of the matters here stated, and an abundance of other evidence developed in a lengthy record, we conclude that the jury findings as to faulty installation are well supported by the evidence. Montgomery Ward & Co. v. Scharrenbeck, 146 Tex. 153, 204 S.W.2d 508; Lone Star Gas Co. v. Holifield, Tex.Civ.App., 150 S.W.2d 282; Wright v. Holland Furnace Co., Inc., 186 Minn. 265, 243 N.W. 387; Fonda v. Northwestern Pacific Service Co., 134 Neb. 430, 278 N.W. 836; Jones v. Blossman, 209 La. 530, 25 So.2d 85; Le Maitre v. Union Electric Power Co., 331 Ill.App. 270, 73 N.E.2d 125; Merion v. Schnitzlein, 129 Cal. App. 721, 19 P.2d 244; Bloecher v. Duerbeck, 338 Mo. 535, 92 S.W.2d 681; Fenton v. Hart, Mo.App., 73 S.W.2d 1034; Wilcox v. Jamison, 55 Utah 535, 188 P. 638; Kuhr v.

Frizzelle, 74 Ga.App. 524, 40 S.E.2d 405; Powers v. Atlanta Gas Light Co., 48 Ga. App. 47, 172 S.E. 84; Applegate v. Portland Gas & Coke Co., 142 Or. 66, 18 P.2d 211; Kelly v. Pittsfield Coal Gas Co., 257 Mass. 441, 154 N.E. 74; Taylor v. Kings County Lighting Co., 247 App.Div. 799, 286 N.Y.S. 36.

■ The child was a normal, healthy, average child, and was a little more than one year old. The parents were a young couple who owned their home and furniture and were parents of two other children at the time of the trial. The assessment of damages is the prerogative of the jury and courts impose their ideas, not as a substitute for the judgment of jurors but to control passion and prejudice. Texas & P. R. Co. v. Matkin, Tex.Civ.App., 142 S.W. 604, affirmed, 107 Tex. 125, 174 S.W. 1098; Texas & N. O. Ry. Co. v. Haney, Tex.Civ. App., 144 S.W.2d 677; City of Harlingen v. Scroggins, Tex.Civ.App., 121 S.W.2d 408; Texas & N. O. Ry. Co. v. McGinnis, Tex. Civ.App., 81 S.W.2d 200.

A verdict in the sum of $20,000 was approved in the case of the death of a five-year-old child in Covey Gas & Oil Co. v. Checketts, 9 Cir., 1951, 187 F.2d 561; a like amount was approved in the case of a twelve-year-old decedent in Louisville & N. R. Co. v. Whisenant, 1952, 214 Miss. 421, 58 So.2d 908; and, again, the same amount was approved in the case of a six-year-old child in Dixie Greyhound Lines v. Woodall, 6 Cir., 1951, 188 F.2d 535. $18,907 was awarded for the death of a five-year-old child in Marianiello v. Bloomquist, 1951, 278 App.Div. 955, 105 N.Y.S. 188; $18,500 was approved in a death case of a five-year-old child in Tyson v. Romey, 1948, 88 Cal. App.2d 752, 199 P.2d 721; $17,000 was granted for the death of a child three days old in Hord v. National Homeopathic Hospital, D.C.D.C.1952, 102 F.Supp. 792; $15,551 was approved in the case of a four-teen-year-old child's death in Weingarten v. Sanchez, Tex.Civ.App., 1950, 228 S.W.2d 303; and $15,000 was held not excessive for the death of a ten-month-old child in Couch v. Pacific Gas & Electric Co., Cal. 1947, 80 Cal.App.2d 857, 183 P.2d 91.

In 1895, for the death of a two-year-old baby, the court approved a recovery of $6,000 in Austin Rapid Transit Ry. Co. v. Cullen, Tex.Civ.App., 29 S.W. 256. During that same year, another Texas Court awarded $5,000 for the death of a seven-year-old child. Taylor B. & H. Ry. Co. v. Warner, Tex.Civ.App., 31 S.W. 66. In 1918, the death of a seven-year-old child resulted in a judgment for $10,000. Flippen-Prather Realty Co. v. Mather, Tex. Civ.App., 207 S.W. 121.

Appellant relies upon the case of Banker v. McLaughlin, Tex.Civ.App., 200 S.W.2d 699. In that case, the Court of Civil Appeals in 1947 reduced a jury award of $15,000 to $6,000 for the death of a six-year-old child, by drowning. Such an award is more in line with the precedents of the late nineteenth century period than the economic period in which the jury worked. Kimbriel Produce Co. v. Webster, Tex. Civ.App., 185 S.W.2d 198.

■ The proof with reference to the child's conscious pain and suffering was that the mother left her child in the home while she went shopping. When she left there was no evidence of danger from fire, and when she returned within thirty minutes, the house was in flames. The fire department received the alarm about 1:15 p. m. and was at the scene within three minutes. There was no evidence of an outcry. The child was found after the fire was extinguished, in the middle of the bedroom floor, where she had apparently died after crawling out of her crib. Her body was horribly burned. The only pain for which there can be a recovery is that which the child consciously experienced, and events that occurred subsequent to a merciful unconsciousness did not prolong nor increase the suffering and are not compensable. The circumstances prove that the child died following some conscious suffering. "Where serious bodily injury has been inflicted, some degree of physical and mental suffering is the necessary result." Texas & P. Ry. Co. v. Gurian, Tex. Civ.App., 77 S.W.2d 274, 278; 13 Tex.Jur., Damages, § 221. Cases where the injury was accompanied by instantaneous uncon-

sciousness are not in point under the evidence of this case, because there is here no suggestion of a blow or other force which resulted in simultaneous insensibility.

While the proof shows that death, in any event, resulted from the defendant's negligence; that the child died from asphyxiation or suffocation by smoke and gases is as consistent with the circumstances as that the child died from burning. In either case, the duration of the suffering was measured more in seconds than in minutes, and we find no precedent for so large a verdict for so short a period of suffering.

"Pain and suffering have no market price. They are not capable of being exactly and accurately determined, and there is no fixed rule or standard whereby damages for them can be measured. Hence, the amount of damages to be awarded for them must be left to the judgment of the jury, subject only to correction by the courts for abuse and passionate exercise. The award for pain and suffering must be limited to compensation. However, compensation in this connection is not to be understood as meaning price or value, but as describing an allowance looking toward recompense for, or made because of, the suffering consequent upon the injury. The question in any given case is not what sum of money would be sufficient to induce a person to undergo voluntarily the pain and suffering for which recovery is sought or what it would cost to hire someone to undergo such suffering, but what, under all the circumstances, should be allowed the plaintiff in addition to the other items of damage to which he is entitled, in reasonable consideration of the suffering necessarily endured. The amount allowed must be fair and reasonable, free from sentimental or fanciful standards, and based upon the facts disclosed. In making the estimate the jury may consider the nature and extent of the injuries and the suffering occasioned by them and the duration thereof." 15 Am.Jur., Damages, § 72.

There is hardly a hitching post to which jurors may tie in evaluating pain in terms of money, yet, they may not roam too far. In our opinion, the jury in examining the photograph and in hearing the evidence with reference to the child's mutilated body failed to distinguish between the periods of the child's consciousness and unconsciousness, and rendered an excessive verdict. If, within fifteen days, the appellees will remit the sum of $5,000 from the amount awarded for pain and suffering, the judgment will be reformed and affirmed; otherwise it will be reversed and remanded. A. B. C. Storage & Moving Co. v. Herron, Tex.Civ.App., 138 S.W.2d 211; Houston Electric Co. v. Flattery, Tex.Civ.App., 217 S.W. 950.

Affirmed on condition.