IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 30, 2001 Session

## STATE *ex rel*. MICKEY PHILLIPS v. GWEN KNOX

**Appeal from the Juvenile Court for Anderson County**
**No. J-16681    Ronald N. Murch, Judge by Interchange**

**FILED NOVEMBER 29, 2001**

**No. E2000-02988-COA-R3-JV**

The Trial Court found Gwen Knox ("Knox") to be in civil contempt for failure to pay child support. This is the second appeal in this case. This Court, in *State ex rel. Phillips v. Knox*, No. E1999-00205-COA-R3-CV, 2000 WL 217936, at * 2 (Tenn. Ct. App. Feb. 25, 2000), vacated and remanded the Trial Court's dismissal of Knox's Second Petition to Vacate and Modify the Trial Court's order finding that Knox was in contempt for failure to pay child support. On remand, the Trial Court denied Knox's petition, again holding, among other things, Knox in civil contempt but reducing Knox's incarceration time for contempt from thirty days to ten days and her purge amount from $1,000 to $100. Knox appeals. We reverse, in part, and affirm, in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed, in part,**
**and Affirmed, in part; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Dr. Michael A.S. Guth, Oak Ridge, Tennessee, for the Appellant, Gwen Knox.

Paul G. Summers and Stuart F. Wilson-Patton, Nashville, Tennessee, for the Appellee, State of Tennessee *ex rel.* Mickey Phillips.

# OPINION

## Background

Mickey Phillips ("Phillips") and Knox had a child ("Child") in 1989. The Trial Court granted custody of the Child to Phillips in 1996. Shortly thereafter, the State of Tennessee, acting as Phillips' assignee, filed a motion requesting the Trial Court modify its child custody order to include an award of child support.[1] In February 1997, the Trial Court entered an agreed order modifying its child custody order to include a retroactive award of child support of $100 per month. In this agreed order, the Trial Court held that the $100 child support obligation deviated from the Child Support Guidelines ("Guidelines") amount because Knox was unemployed. The Trial Court also set a hearing for May 1997, to render Knox's child support obligation consistent with the Guidelines depending upon Knox's employment status. Knox was ordered to search for a job, and the child support order provided that if Knox was not employed or did not appear for the May 1997, hearing, her child support obligation would be increased to $165 per month.

The May 1997, hearing was continued until September 1997. Knox failed to appear for this hearing, and the Trial Court increased her child support obligation to $155 per month. The Trial Court also added an amount for Knox's child support arrears which brought Knox's total monthly child support obligation to $215. In December 1997, the Trial Court entered an order holding that Knox had made no child support payment since September 1997.

Early in 1998, Knox filed a Petition to Vacate or Modify Order asking the Trial Court to vacate its order of child support. In this petition, Knox requested the Trial Court vacate the current child support obligation until Knox became gainfully employed.

In April 1998, the State filed a petition for contempt, citing Knox's failure to pay child support. The State's petition cited no specific contempt statute. The Trial Court scheduled a hearing in September 1998, on the State's petition for contempt. Knox failed to appear for the hearing.

The contempt hearing finally was held in February 1999, and Knox attended the hearing with appointed counsel. Knox and Phillips provided testimony. Knox testified she was last employed four months prior to the hearing and that her only current source of income was $400 per month in food stamps and $226 per month in Aid to Families with Dependent Children ("AFDC") benefits. Knox also testified about jobs she had held but lost since the child support order was entered. The proof contained in the record on appeal shows that at the time of the hearing, Knox's child support arrearage totaled approximately $5,680.[2]

---

[1] Since the State is proceeding in this matter as Phillips' assignee, we will refer in this opinion to the appellee as the State.

[2] For simplicity's sake, we use round numbers in this opinion as much as possible.

The Trial Court found Knox to be in willful contempt of the child support order because Knox failed to pay child support when she had the ability to do so. The Trial Court held, in its order ("First Contempt Order"), that Knox was capable of working. In addition to deciding the State's petition for contempt, the Trial Court denied Knox's Petition to Vacate or Modify Order. The Trial Court ordered Knox's total child support obligation to remain $215 per month. The Trial Court ordered Knox jailed for thirty days and set a purge amount of $1,000. The Trial Court also ordered Knox's driver's license to be revoked pursuant to Tenn. Code Ann. § 36-5-701, *et seq.* In addition, the record shows that at the hearing, the Trial Court addressed Knox as follows:

> Ms. Knox, you've had jobs and you failed to pay, your credibility is extremely questionable. There are admissions today regarding jobs, at least two, when you've been asked that same question previously and those jobs have never been reported to This Court. I do not find that if you had a stable source of income you would pay, because you have had income and you've paid zip.

In addition, the transcript of the hearing contained in the record shows that while the Trial Court was rendering its decision from the bench, Knox stated "I come today with a check." There is no proof in the record, however, regarding the amount of the check that Knox purportedly had. Knox, at any rate, did not pay the purge amount until after spending eight days in jail.

In March 1999, Knox filed Respondent's Second Petition to Vacate and Modify the Court's Orders ("Petition"), in which she raised a number of issues regarding the Trial Court's First Contempt Order, including that the Trial Court erroneously incarcerated Knox for contempt since Knox did not have the ability to pay the purge amount of $1,000. Knox argued that since she did not have the ability to purge herself, the Trial Court's finding of civil contempt was, in effect, a finding of criminal contempt meant to punish Knox for her failure to comply with the child support order. The Trial Court dismissed the Petition, finding no authority for Knox to challenge the child support order a second time after Knox's first petition to vacate or modify was denied.

Thereafter, Knox appealed the dismissal of her Petition to this Court. On appeal, we vacated the Trial Court's dismissal of the Petition and remanded the matter, holding that the Petition, despite its caption, was "in substance, a motion to alter or amend *the order of the trial court finding Knox in contempt. See* Rule 59.02, Tenn.R.Civ.P." *State ex rel. Phillips v. Knox*, 2000 WL 217936, at * 2. Although Knox raised issues regarding the merits of the Trial Court's First Contempt Order, this Court did not address those issues. *Id.*, at * 2 n.1.

On remand, Knox filed a Memorandum in support of her Petition. The Trial Court held a hearing in August 2000, regarding Knox's Petition.[3] The Trial Court made the following findings of fact in its Order entered in November 2000 ("Second Contempt Order"):

> (1) Knox is the mother of four children, including the Child whose support is at issue in this matter. Knox has custody of three children, all of whom were under the age of five at the time of the February 1999, contempt hearing. Knox has child care available from her mother and DCS Day Care Supplement.

> (2) Knox does not have a high school diploma or a GED, nor has she ever had a driver's license.

> (3) Knox's only income is from food stamps and AFDC, and she has no savings or assets. Since the Trial Court ordered Knox to pay child support in February 1997, Knox has held four jobs. The Trial Court, however, held that "[Knox] has willfully failed to maintain or seek a job(s) having voluntarily quit employment at least twice without sufficient reason to do so, and having failed to diligently seek other employment."

In addition, the Trial Court, in its Second Contempt Order, modified its First Contempt Order as follows:

> Contempt: [Knox] is in willful contempt of the previous Order of this Court to pay child support by failing to pay child support or to make any reasonable effort to do so even though [Knox] had ability to do so, she having voluntarily and willfully failed to and/or refused to diligently seek or maintain a job that would have enabled her to pay child support. . . .

> Jail: 10 days in jail ordered with all to be served [immediately] and the rest to be suspended pending [Knox's] compliance with the orders of the Court. . . .

---

[3] Knox filed a Tenn. R. App. P. 24(c) Statement of the Evidence which, despite the existence of a transcript for the first contempt hearing held in February 1999, hearing, purports to cover both the first contempt hearing and the August 30, 2000, contempt hearing on remand. The record on appeal does not contain a transcript of the second contempt hearing. Knox's Statement of the Evidence provides that at the second contempt hearing, no further testimony was given and the Trial Court only heard arguments of counsel. On remand, the Trial Court, in its Second Contempt Order, stated that it listened to a tape recording of the February 4, 1999, contempt hearing. It should be noted that the record on appeal does not contain this audio tape of the first contempt hearing but does contain a transcript thereof. In addition, the technical record shows that on remand, the State filed no pleadings related to the merits of Knox's Petition.

-4-

Purge Clause: [Knox] may purge herself of Contempt and be released from jail by paying $100.00 which includes the 5% fee. . . .

Knox paid the $1,000 purge amount prior to this hearing. In its Second Contempt Order, the Trial Court stated that Knox borrowed $1,000 from a relative to pay the purge amount. The Trial Court ordered that the $900 difference between the $1,000 purge amount that Knox previously paid and the $100 purge amount set in the Second Contempt Order would be applied to her child support arrearage. Furthermore, the Trial Court held that Knox's "voluntary and willful failure or refusal to diligently seek a job or fail [sic] to keep and maintain a job though she had the ability to do so prevents her from asserting inability to pay as a defense to this contempt action." While the Trial Court acknowledged that "[Knox's] payment of all child support ordered would be difficult. . .[,]" it held that "[Knox] has willfully failed and/or refused to make any reasonable effort to pay child support." Knox appeals.

## **Discussion**

On appeal and although not stated exactly as such, Knox raises the following issues: (1) the Trial Court erred in refusing to reduce Knox's child support obligation and in ordering her obligation to continue during her incarceration; (2) the Trial Court's order of civil contempt and incarceration for Knox's failure to comply with the child support order creates, in effect, a debtor's prison regime because Knox did not have the "keys to the jail," that is, the ability to comply with the child support order or pay the purge amount; (3) the Trial Court erred in following the procedures of civil contempt because the Trial Court actually imposed criminal contempt upon Knox due to the Trial Court's punitive intent and motivation; (4) the Trial Court's incarceration of Knox violated her federal and state constitutional rights, and Knox is entitled to declaratory relief; (5) the Trial Court erred in refusing to reinstate Knox's driver's license after the purge amount had been paid; (6) the Trial Court abused its discretion in finding that Knox's mother could provide child care services for Knox's three minor children; and (7) the Trial Court, in making its factual findings, erred in relying upon inadmissible hearsay and matters outside the proof submitted by the parties.

On appeal, the State contends the Trial Court properly found Knox in contempt of the child support order due to her willful underemployment or unemployment. The State also contends that, on remand, the Trial Court set an appropriate purge amount for Knox. The State further argues that many of Knox's issues on appeal were waived or are otherwise not properly before this Court.

Before we address the merits of Knox's issues on appeal, we first note that Knox has included many factual allegations in her brief on appeal which are not supported by or contained in the record on appeal. *See* Tenn. Ct. App.R. 6. While we did not consider these allegations, Knox's inclusion of these unsupported allegations made it more difficult for this Court to address Knox's legitimate issues.

A court's determination of contempt and its manner of dealing with contempt is subject to an abuse of discretion review. *Quality First Staffing Serv. v. Chase-Cavett Serv., Inc.,* No. 02A01-9807-CH-00205, 1999 WL 281312, at * 3 (Tenn. Ct. App. May 7, 1999), *no appl. perm. app. filed*; *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 912 (Tenn. 1964). We should not reverse for "'abuse of discretion' a discretionary judgment of a trial court unless it affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining." *Marcus v. Marcus,* 993 S.W.2d 596, 601 (Tenn. 1999) (quoting *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). With respect to the Trial Court's findings of fact, our review is *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). The Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997).

Although Knox raises numerous issues on appeal, all of Knox's arguments are based upon the Trial Court's imposition and enforcement of the child support order. Knox argues on appeal that the Trial Court erred by denying her request to reduce her child support obligation to zero because she was not employed and her only income was derived from AFDC, food stamps and four months of unemployment compensation. Knox also disputes the Trial Court's determination that she is willfully unemployed or underemployed.

In setting child support obligations, the court is to apply "as a rebuttable presumption the child support guidelines. . . ." Tenn. Code Ann. § 36-5-101(e)(1)(A). The Child Support Guidelines provide that a child support award is based upon a "flat percentage of the obligor's net income. . . ." Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(2). The Guidelines specifically exclude AFDC and food stamps from its definition of "income." Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(3)(c). Where the obligor seeks a modification of the child support order, the court shall apply the "significant variance test" to compare the Guidelines amount and the current support order. "Significant variance" is defined by the Guidelines as "at least 15% if the current support is . . . [$100] or greater per month and at least . . . [$15] if the current support is less than $100 . . . per month." Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(3).

While AFDC and food stamps are excluded from the Guidelines' definition of "income," this Court, however, has held that the receipt of such public assistance does not prohibit a court from finding that a child support obligor is willfully and voluntarily unemployed or underemployed. *State ex rel. Norfleet v. Dobbs*, No. 01A01-9805-CV-00228, 1999 WL 43260, at * 5 (Tenn. Ct. App. Feb. 1, 1999), *no appl. perm. app. filed*, (holding that despite the obligor's receipt of SSI benefits, she was still employable and was willfully unemployed). "The determination of whether an obligor is willfully and voluntarily unemployed or underemployed is dependent upon the factual background of the case." *Pennington v. Pennington*, No. W2000-00568-COA-R3-CV, 2001 WL 277993, at * 3 (Tenn. Ct. App. Mar. 14, 2000), *no appl. perm. app. filed*.

The Trial Court specifically held, in its Second Contempt Order, that Knox had "willfully failed to maintain or seek a job(s) having voluntarily quit employment at least twice without sufficient reason to do so, and having failed to diligently seek other employment." The evidence actually contained in the record does not preponderate against this finding. Accordingly, we affirm the Trial Court's determination that Knox was willfully or voluntarily unemployed or underemployed.

The Guidelines provide that if the court finds that the obligor is "willfully and voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, as evidenced by educational level and/or previous work experience." Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(d). Based upon the record before us, the evidence does not preponderate against the Trial Court's determination of Knox's potential income as reflected by the amount of child support ordered. Therefore, based upon the evidence contained in the record on appeal, we hold that the Trial Court did not err in denying Knox's request for a reduction in child support. Accordingly, we affirm the Trial Court's refusal to reduce Knox's child support obligation.

We now turn our inquiry to Knox's main issue on appeal, the Trial Court's finding that Knox was in contempt and its imposition of the $1,000 and $100 purge amounts and resulting incarceration. Knox contends that the proof contained in the record shows that Knox satisfied her burden of establishing that she did not have the present ability to pay the purge amounts and, therefore, the Trial Court erred in incarcerating her for civil contempt. Knox also argues the Trial Court actually imposed punishment for criminal contempt despite following the procedures for civil contempt.

"An act of contempt is a wilful or intentional act that offends the court and its administration of justice." *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000). Tennessee courts have inherent power to punish contempt, but this power is limited by statute. Tenn. Code Ann. § 29-9-102 describes the acts which constitute contempt and provides the scope of the court's power of contempt, in pertinent part, as follows:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases: . . .
>
> > (3) The willful disobedience or resistance of any officer of the [sic] such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts. . . .

"Thus, to find contempt under this statute, a court must find the misbehavior, disobedience, resistance, or interference to be wilful." *Ahern v. Ahern*, 15 S.W.3d at 79.

Before the Trial Court could find Knox in contempt of the child support order, it had to find that Knox had the ability to pay the support when it was due and that her failure to pay the support was willful. *Id.* The Trial Court made such a finding. The evidence in the record does not preponderate against this finding. Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d at 692. As already discussed, we affirm the Trial Court's determination that Knox was willfully or voluntarily unemployed or underemployed. Based upon the evidence actually contained in the record on appeal, we hold there was no abuse of discretion by the Trial Court in holding Knox in contempt.

We next address what type of contempt the Trial Court imposed on Knox. On appeal, Knox contends the Trial Court, in effect, held Knox in criminal contempt due to its punitive intent and due to Knox's inability to pay the purge amount. The two types of contempt are civil and criminal. *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). This Court has held that "[i]n determining whether a contempt proceeding is civil or criminal in nature, the proper focus is on the character and purpose of the action." *Poole v. City of Chattanooga*, No. E1999-01965-COA-R3-CV, 2000 WL 310564, at * 1 (Tenn. Ct. App. Mar. 27, 2000), *no appl. perm. app. filed.* "Civil contempt occurs when a person refuses or fails to comply with a court order and a contempt action is brought to enforce private rights." *Black v. Blount*, 938 S.W.2d at 398.

After a court finds contempt, it has several remedies available, including incarceration, to compel compliance with a court order. *Ahern v. Ahern*, 15 S.W.3d at 79. When a court incarcerates a person to induce performance of a court order, this is typically referred to as civil contempt. *Id.* Our Supreme Court further described civil contempt as follows:

> If imprisonment is ordered in a civil contempt case, it is remedial and coercive in character, designed to compel the contemnor to comply with the court's order. Compliance will result in immediate release from prison. Therefore, it has often been said that in a civil contempt case, the contemnor "carries the keys to his prison in his own pocket . . . ."

*Black v. Blount*, 938 S.W.2d at 398 (alterations in original) (quoting *State ex rel. Anderson v. Daugherty*, 191 S.W.974 (Tenn. 1917)).

By comparison, criminal contempt is punishable by "punitive and unconditional" sanctions. *Black v. Blount*, 938 S.W.2d at 398; *see also State ex rel. Everson v. Gooch*, No. 89-164-II, 1990 WL 3976, at * 1 (Tenn. Ct. App. Jan. 24, 1990), *no appl. perm. app. filed*, (holding that for criminal contempt, "[p]unishment is imposed unconditionally and the respondent cannot escape by purging himself of contempt"). "A party who is in criminal contempt cannot be freed by eventual compliance." *Ahern v. Ahern*, 15 S.W.3d at 79. The purpose behind a court's finding of criminal contempt is to "preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society." *Black v. Blount*, 938 S.W.2d at 398. Moreover, in a trial for criminal contempt, the respondent's guilt must be proven beyond a reasonable doubt. *Id.*

The Trial Court did not specify in either of its contempt orders whether it found Knox in civil or criminal contempt, nor did it specify which statute it was relying upon to impose imprisonment and the purge amounts. Moreover, the State did not specify in its petition upon which contempt statute it was relying. The record on appeal, however, shows that, under both contempt orders, Knox could purge herself of contempt by paying the purge amount and that she was released from jail upon paying the $1,000 purge amount. In addition, the record on appeal shows that the Trial Court held Knox in contempt for her failure to comply with the child support order and sought to induce her compliance with the order. Accordingly, her contempt was civil. *See id.*; *Ahern v. Ahern*, 15 S.W.3d at 79.

Courts are authorized to incarcerate a person for civil contempt by Tenn. Code Ann. § 29-9-104 which provides:

> (a) If the contempt consists in an omission to perform an act which it [sic] is yet in the power of the person to perform, the person may be imprisoned until such person performs it.
>
> (b) The person . . . can be separately fined, as authorized by law, for each day it is in contempt until it performs the act ordered by the court.

*Ahern v. Ahern*, 15 S.W.3d at 79.

On appeal, both parties agree the Trial Court first had to find that Knox had the ability to pay the purge amount before it could order Knox incarcerated for civil contempt. A court may incarcerate a party who is in civil contempt so long as the party has the ability to comply with the order at the time of the contempt hearing. *Ahern v. Ahern*, 15 S.W.3d at 79; *see also Poole v. City of Chattanooga*, 2000 WL 310564, at * 3 (acknowledging that "[i]n American Jurisprudence, a 'debtor's prison' is an anathema"). The burden to prove inability to comply with the court's order, however, is on the obligor. *Quality First Staffing Serv. v. Chase-Cavett Serv., Inc.,* 1999 WL 281312, at * 3; *Leonard v. Leonard*, 341 S.W.2d 740, 743 (Tenn. 1960). The State did not have to prove that Knox had the ability to comply with the Court's Order by paying the purge amount. Rather, Knox had the obligation to prove her inability to comply with the Court's Order by paying the purge amount.

Knox contends the proof contained in the record shows she carried her burden of proving she did not have the ability to pay either the $1,000 or $100 purge amount. In neither of its contempt orders did the Trial Court specifically find whether Knox had the present ability to pay the purge amount. The Trial Court's failure to include that finding is not, however, dispositive of this issue. *See Leonard v. Leonard*, 341 S.W.2d at 745 (holding that while the trial court's failure to include such a finding in a contempt order is not fatal, it is better practice for the trial court to do so). With respect to proof regarding Knox's ability to pay the purge amount, the record shows that Knox testified that her sole income was derived from food stamps and AFDC benefits and that she had no

assets or savings. The Trial Court's Second Contempt Order incorporates this proof in the Trial Court's findings of fact. In addition, the record on appeal shows that at the first contempt hearing, Knox testified she receives assistance for her utilities. Knox filed a Uniform Civil Affidavit of Indigency in which she stated she received $55 in unemployment compensation for four months sometime prior to the contempt hearing.[4] Phillips testified at the first contempt hearing that he witnessed Knox working as a stripper in 1998. Knox denied she had worked as a stripper since 1994 or 1995. Knox testified she earned approximately $1,000 in 1994 from this employment. We also note the record contains Knox's statement to the Court at the contempt hearing that she arrived at the hearing "with a check." Moreover, the Trial Court specifically held that Knox's "credibility is extremely questionable", and we must give deference to the Trial Court's determination of the witnesses' credibility. *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001).

Under similar circumstances, this Court held that a respondent should not be incarcerated for contempt where she carried her burden of establishing that she was presently unable to pay the court-imposed fines. *Poole v. City of Chattanooga*, 2000 WL 310564, at * 4-5. In *Poole*, this Court held the respondent's testimony established that she was indigent, had no assets or savings, held her last job several years prior to the contempt hearing, and her only income was derived from her work as a prostitute. *Id.*, at * 4. *See also State ex rel. Everson v. Gooch*, 1990 WL 3976, at * 2 (reversing the trial courts' contempt order of incarceration where respondents' testimony established that their only income was derived from low-paying part-time jobs and that they had no assets); *State ex rel. Moore v. Owens*, No. 89-70-II, 1990 WL 8624, at * 3-4 (Tenn. Ct. App. Feb. 7, 1990), *no appl. perm. app. filed*, (reversing the trial court's incarceration of respondent where respondent met the burden of establishing inability to pay where respondent testified he was last employed three years before the hearing and that his only asset was a ten-year old automobile).

Moreover, the fact that Knox actually paid the $1,000 purge amount by borrowing money from a relative after spending eight days in jail is not material. A respondent in a contempt proceeding cannot be forced to borrow funds to comply with the court's order. *Netherton v. Netherton*, No. 01A01-9208-PB00323, 1993 WL 49556, at * 3 (Tenn. Ct. App. Feb. 26, 1993), *no appl. perm. app. filed*. In addition, that Knox testified she held four jobs since the child support order was entered does not change our analysis since, at the time of the hearing, Knox was not employed. *Id.* (citing *Going v. Going*, 256 S.W.2d 890, 898 (Tenn. 1923) (holding that our Supreme Court rejected the theory that in a contempt proceeding, a respondent who does not have property but is able to work is subject to incarceration which would "put a pressure on [the respondent] to raise the money somehow"). The law of this state provides that a contempt respondent must have the present ability to comply with the order at the time of the contempt hearing before the Court can imprison the respondent to compel performance of the court order. *Ahern v. Ahern*, 15 S.W.3d at 79.

---

[4] In December 1998, prior to the first contempt hearing, Knox filed a Uniform Civil Affidavit of Indigency in which she listed $55 per month in unemployment benefits for a four-month period as income. Knox did not state in her affidavit when the four-month unemployment compensation period ended and did not provide any testimony regarding this income.

Based upon the evidence contained in the record, we hold that it was error for the Trial Court to incarcerate Knox based upon her failure to pay the $1,000 purge amount set in the Trial Court's First Contempt Order. The Trial Court, however, properly reduced this purge amount on remand. Knox's testimony and the Trial Court's own findings of fact contained in both its contempt orders establish that Knox had no assets or savings, no employment, and no regular income besides AFDC in the amount of $226, food stamps valued at $400 and unemployment compensation of $55 for some period of time. Accordingly, we hold that Knox carried her burden of establishing that she did not have the present ability to pay the $1,000 purge amount.

Since the proof contained in the record on appeal shows that Knox carried her burden of establishing that she did not have the ability to pay the purge amount, we hold the Trial Court erred in imposing a $1,000 purge amount on Knox and then incarcerating her until she paid this purge amount. We also hold, however, that on remand, the Trial Court corrected this error and properly reduced the purge amount and applied $900 of the $1,000 previously paid by Knox toward her substantial child support arrearage of over $5,600. Although Knox, on appeal, requests a refund of the $1,000 purge amount she paid, we decline to order any "refund" since Knox, in effect, received a $900 refund when the Trial Court credited $900 toward her child support arrearage.

With respect to the $100 purge amount set by the Trial Court on remand, we find no abuse of discretion with the Trial Court's imposition of this purge amount. Although we acknowledge that given Knox's limited means, $100 may be a difficult purge amount to meet, we find that the proof actually contained in the record does not satisfy Knox's burden to show her inability to pay this amount. We hold that Knox did not carry her burden of establishing her inability to pay the $100 purge amount, and therefore, we find no abuse of discretion in the imposition of this purge amount by the Trial Court. This being so, the remaining $100 of the original $1,000 paid was appropriately applied to satisfy the $100 purge amount. We also note that Knox never was imprisoned after the purge amount was lowered to $100 as Knox had already paid the $100 purge amount.

We now turn our inquiry to the Trial Court's revocation of Knox's driver's license. The Trial Court's First Contempt Order states that Knox's "drivers licenses [sic] . . . shall be revoked pursuant to TCA 36-5-701 et seq. upon [Knox] being $500 or more in arrears and the arrears becoming ninety days or more past due." We note, however, that the Trial Court in its second Contempt Order found that Knox never had a driver's license. This finding is inconsistent with a revocation of her driver's license. In its Second Contempt Order, on remand, the Trial Court did not modify this part of the First Contempt Order.

Tenn. Code Ann. § 36-5-701, *et seq.*, sets forth the procedure to be followed when a person's license is being revoked, denied or suspended for failure to pay child support.[5] We note that the State did not request such relief in its Petition for Contempt. In addition, Knox contends on

_____

[5] The term "license" is defined by Tenn. Code Ann. § 36-5-701(4), and this definition includes a license "granting authority to . . . operate any motor vehicle or other conveyance. . . ."

-11-

appeal that her efforts to find employment so that she is able to pay child support are impeded by the revocation of her driver's license. We agree. We acknowledge that the Trial Court was well-intentioned in revoking Knox's driver's license in order to obtain compliance with the child support order. Under the facts and circumstances presented by the record on appeal, however, we hold that the revocation of Knox's driver's license only serves to undermine the receipt of child support by the ultimate beneficiary, the Child. "Under well-recognized principles of Tennessee law, the obligation of child support . . . [is] intended for the benefit of the child. . . ." *Rutledge v. Barrett*, 802 S.W.2d 604, 607 (Tenn. 1991). Accordingly, we reverse the Trial Court's Second Contempt Petition insofar as it did not reinstate Knox's driver's license, if Knox actually had a driver's license prior to the Court's order of revocation.

Knox attempts to raise several issues on appeal that are not properly before this Court. Knox, on appeal, has requested this Court grant her compensatory damages and declaratory relief for the alleged error of the Trial Court in imposing incarceration for civil contempt. This relief was never requested by Knox in the Trial Court and is raised for the first time on appeal. Knox also contends the Trial Court erred in ordering that Knox's child support obligation should continue during her incarceration for contempt. Knox's brief on appeal, however, does not provide a citation to the record where this issue was raised, and we have been unable to locate where Knox raised this matter before the Trial Court. It is well-settled that issues not raised at trial may not be raised for the first time on appeal. *Simpson v. Frontier Comty. Credit Union,* 810 S.W.2d 147, 153 (Tenn. 1991); *DHS v. DeFriece,* 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996). Moreover, this Court is not under a "duty to blindly search the record in order to find proof to substantiate the factual allegations of the parties or any other evidence to support a party's contentions." *Pearman v. Pearman*, 781 S.W.2d 585, 588 (Tenn. Ct. App. 1989). These issues, therefore, are not properly before this Court.

Knox also contends it was an abuse of discretion for the Trial Court to find that Knox's mother could provide day care services for Knox while Knox worked. In making this argument, Knox raises constitutional issues on behalf of Knox's mother. Knox's mother, however, is not a party to this litigation, and, more importantly, the Trial Court never ordered Knox's mother to provide daycare services for Knox while Knox worked. It is worthy of mention that Knox testified at the first contempt hearing that she had child care available from two sources, her mother and DCS. The Trial Court's finding of fact regarding the availability of child care was based upon Knox's own testimony.

Finally, Knox raises an issue regarding the Trial Court's apparent reliance, in making its findings of fact, upon hearsay or matters not contained in the proof. Knox argues that the Trial Court erroneously relied upon information not contained in the record to make its factual finding that Knox has never had a driver's license. Knox also argues that the Trial Court, in its Second Contempt Order, based its factual finding regarding Knox's failure to appear for one of her jobs upon the State's unsupported allegation. In light of our determination that the Trial Court correctly found that Knox was willingly unemployed or underemployed and our reversal of the Trial Court's failure to reinstate Knox's driver's license, this issue is pretermitted.

## Conclusion

The Trial Court's failure to reinstate Knox's driver's license is reversed. We affirm the remainder of the Trial Court's judgment. This cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed equally against the Appellant, Gwen Knox, and her surety, and the Appellee, State of Tennessee *ex rel.* Mickey Phillips.

_____
D. MICHAEL SWINEY, JUDGE